FILED
U.S. DIST. COURT
BRUNSWICK DIV.

2005 JAN 27 | A || : 34

CLERK _____
SO. DIST. OF GA.

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION**

ROBERT L. NEWLAND,           :
                             :
            Petitioner,      :        CIVIL ACTION NO.: CV203-146
                             :
    v.                       :
                             :
FREDERICK HEAD, Warden,      :
                             :
            Respondent.      :

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Petitioner, an inmate currently confined at the Georgia Diagnostic and Classification Center in Jackson, Georgia, filed an action pursuant to 28 U.S.C.A. § 2254, contesting the validity of his convictions and sentences. Respondent filed a Response. For the reasons which follow, Newland's petition should be **DENIED**.

## STATEMENT OF THE CASE

In Glynn County Superior Court, Petitioner Robert L. Newland ("Newland") was convicted of malice murder, for which he was sentenced to death, and aggravated assault with intent to rape, for which he was sentenced to twenty years' imprisonment. The sentences were set to run consecutively. Newland v. State, 258 Ga. 172, 366 S.E.2d 689 (1988).

On direct appeal to the Georgia Supreme Court, Newland asserted that the trial court erred by refusing to grant his motion for a new trial based on the following grounds: 1) the verdict was contrary to the law, the evidence, and the weight of the evidence; 2) the trial

40

court erred by admitting, over his objection, the testimony of Detective Greg McMichael regarding communications from the victim about the identity of her assailant; and 3) the trial court erred in refusing to grant his motion for a directed verdict on the charge of aggravated assault with intent to rape.

The Georgia Supreme Court affirmed, holding that: 1) a rational trier of fact could have determined beyond a reasonable doubt that Newland was guilty of malice murder; 2) the admissibility of McMichael's testimony, even if error, was harmless; and 3) the trial court did not err in refusing to grant Newland's motion to dismiss because there was evidence from which a jury could have concluded that he was guilty of aggravated assault with intent to rape. Newland, 258 Ga. at 172, 366 S.E.2d at 689. Newland filed a petition for a writ of certiorari with the United States Supreme Court, and the petition was denied. Newland v. Georgia, 488 U.S. 975, 109 S. Ct. 514, 102 L. Ed.2d 549 (1988).

Newland filed a petition for a writ of habeas corpus with the Butts County Superior Court. In the petition, he asserted the following errors: a) his conviction and death sentence were a miscarriage of justice, and a rational jury could not have concluded that the evidence was sufficient to find him guilty; b) the admission of evidence identifying him was prejudicial error; c) his right against self-incrimination was violated when his involuntary statements were admitted; d) his conviction was based on evidence obtained in violation of the spouse testimonial privilege; e) improper instructions were given to the jury during the guilt/innocence phase of the trial; f) there was an improper charge on intoxication which prevented the jury from considering the legal effect of intoxication on his mental state; g) improper instructions precluded the jury from considering his intoxication as mitigating evidence; h) he was denied access to a competent mental health evaluation; i) he was

2

deprived of a fair trial and expert assistance; j) he was denied effective assistance of trial counsel; k) he received ineffective assistance of appellate counsel; l) the aggravating factors found by the jury were unconstitutionally vague and not supported by the evidence; m) the trial court's penalty phase instructions violated numerous provisions of the state and federal constitutions; n) the improper instructions on mitigating circumstances and evidence resulted in an unreliable death sentence; o) his death sentence was based upon improper and inadmissible aggravating evidence; p) he was denied his right to a speedy trial; q) his constitutional rights were violated by improper arguments made by the prosecution; r) his constitutional rights were violated by improper conduct by the jurors; s) he was denied due process, equal protection of the law, and his right to be tried by a jury of his peers when the trial court refused to exclude jurors on the basis of their opinions regarding the death penalty; t) prejudicial and inflammatory evidence was admitted at trial; u) the trial court refused to hear and decide his motion for funds to get an expert and investigative assistance; v) his trial had numerous procedural and substantive errors which cumulatively denied him of the right to a fair trial; w) he was excluded from critical stages of the pretrial hearings and the trial; x) the death penalty constitutes cruel and unusual punishment in Georgia because the electric chair is used, and the death penalty is applied in an "arbitrary and capricious fashion"; y) the Unified Appeal Procedure violated his rights under the State and federal constitutions; a)[1] there were various forms of State misconduct throughout the trial which violated his constitutional rights; b) his indictment was invalid because it was based on a grand jury

---

[1] This list follows the designation of arguments as they appear in Judge Johnston's December 20, 2001,Order which purposefully lacked a "z." The list combines Newland's amended petition and his post-hearing brief The arguments drawn from the amended petition end with "y" because the document consists of only 25 claims. The arguments from the post-hearing brief start immediately after "y" with another "a." (See Resp't Ex 39, p 11 )

AO 72A
(Rev 8/82)

system which excluded minorities; c) there was an arbitrary abuse of discretion inherent in the prosecution's decision to seek the death penalty against him; d) the prosecution committed a Brady violation by suppressing evidence that was favorable to his case; e) the prosecution made improper and prejudicial remarks during opening statements; f) the prosecution deliberately obtained and presented "graphic" testimony and "gruesome" photographs related to the victim's injuries; g) the prosecution was allowed to interject impermissible victim impact and penalty phase considerations during the guilt/innocence phase of the trial; h) the prosecutors made improper arguments; and I) his constitutional rights were violated because his conviction was based, at least in part, on his involuntary confession. (Resp't Ex. No. 39, pp. 5-14.) An evidentiary hearing was held, and in a one-sentence Order[2], the Honorable Robert G. Johnston, III, Butts County Superior Court judge, denied Newland's petition for habeas relief. The Georgia Supreme Court granted Newland's subsequent application for certificate of probable cause to appeal. (Doc. No. 13, p. 7.) Upon review, the Georgia Supreme Court remanded the case for more detailed findings of fact and conclusions of law. (See Resp't Ex. 37.) On December 20, 2001, Judge Johnston issued a more detailed Order in which he denied Newland's petition for habeas corpus, as amended. (Resp't Ex. 39.)

Newland filed an application for certificate of probable cause with the Georgia Supreme Court to appeal the state habeas court's decision. The Georgia Supreme Court

---

[2] The Order dated February 22, 1999, issued by the Honorable Robert G. Johnston, III, stated: "After reviewing all the facts and issues in the above styled case, this Court finds that Newland is not entitled to the granting of habeas corpus relief on any issue raised in his amended petition and enters judgment in favor of the Respondent." (Resp't Ex. 32 )

4

denied the request. Newland filed a petition for a writ of certiorari with the United States

Supreme Court, and the petition was denied. (Doc. No. 13, p. 8.)

## ISSUES PRESENTED

In the instant federal habeas petition, Newland alleges that[3]:

I.      He was denied effective assistance of counsel in violation of Strickland v. Washington
because his counsel failed to: adequately prepare for trial; adequately litigate the
issue of the voluntariness of his alleged confession; conduct a non-prejudicial voir
dire; present a competent defense; perform at an acceptable level during his
sentencing phase; and perform at an acceptable level during the hearing on his
motion for a new trial and on direct appeal;

II.     He was denied due process of law in light of the jury instructions during the
guilt/innocence phase;

III.    He was denied due process of law in light of the jury instructions during the
sentencing phase;

IV.     His constitutional rights were violated in various other respects; (Doc. No. 13), and
V.      His right to confrontation was violated when hearsay statements of the victim were
admitted. (Doc. No. 30.)

## STANDARD OF DETERMINATION

As Newland filed his section 2254 application for the writ of habeas corpus on

September 22, 2003, after the enactment of the Antiterrorism and Effective Death Penalty

Act ("AEDPA"), 28 U.S.C. § 2254(d) governs the determination of whether habeas relief is

appropriate. Lindh v. Murphy, 521 U.S. 320, 117 S. Ct. 2059, 138 L. Ed.2d 481 (1997)

(holding that the new provisions of chapter 153 are generally applicable only to cases filed

after April 24, 1996). 28 U.S.C. § 2254(d) sets forth the deference to be afforded to a State

court's legal determinations:

---

[3] Newland contends that all of his claims are based on violations of the Fifth, Sixth, Eighth, and Fourteenth
Amendments of the United States Constitution.

AO 72A
(Rev 8/82)

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Additionally, section 2254(e)(1) provides that a State court's determination of a factual issue "shall be presumed to be correct" until a petitioner rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); Peoples v. Campbell, 377 F.3d 1208, 1224 (11th Cir. 2004). Thus, the AEDPA increases the deference to be given by the federal courts to the State court's factual findings and legal determinations. See Neelley v. Nagle, 138 F.3d 917 (11th Cir. 1998).

In reviewing a petitioner's habeas claim under section 2254(d)(1), a court should first determine the law that was "clearly established" by the United States Supreme Court at the time the State court adjudicated the petitioner's claim. Williams v. Taylor, 529 U.S. 362, 391, 120 S. Ct. 1495, 1512, 146 L. Ed.2d 389 (2000). After determining the clearly established law, the reviewing court should next determine whether the State court's adjudication was "contrary to" clearly established Supreme Court case law or involved an unreasonable application of that clearly established Supreme Court law. Id. at 391, 120 S. Ct. at 1512. A state court's adjudication is contrary to clearly established Supreme Court case law if "the state court arrives at a conclusion opposite to that reached by [the

6

Supreme] Court on a question of law or if the State court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Id. at 413, 120 S. Ct. at 1523. A State court's decision involves an unreasonable application of clearly established Supreme Court law if the "court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. A federal habeas court making the "unreasonable application" inquiry should ask whether the State court's application of clearly established federal law was objectively reasonable. Id. at 409, 120 S. Ct. at 1521.

## DISCUSSION AND CITATION OF AUTHORITY

### I. Ineffective Assistance of Counsel Claims.

Newland claims that he received ineffective assistance of counsel because his counsel: (a) inadequately prepared for trial; (b) failed to adequately litigate the voluntariness of his confession; (c) conducted an inadequate voir dire; (d) failed to present a competent defense during the guilt/innocence phase; (d) performed deficiently during the sentencing phase; and (e) performed deficiently at the hearing on his motion for a new trial and on direct appeal.

Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed.2d 674 (1984), is the clearly established United States Supreme Court precedent that governs the disposition of Newland's ineffective assistance of counsel claims. Respondent asserts that the state habeas court made a reasonable determination of the facts presented at the state habeas hearing and reasonably applied Strickland in rejecting each of Newland's claims.

7

Finally, Respondent concludes that Newland has failed to show by clear and convincing evidence that the state habeas court's factual findings were erroneous.

A claim that a defendant did not receive effective assistance of counsel involves the right to counsel which guarantees not only assistance, but effective assistance of counsel. Id. at 686, 104 S. Ct. at 2063. The standard governing ineffective assistance of counsel claims was set forth by the United States Supreme Court in Strickland, and the "benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Id. at 686, 104 S. Ct. at 2064. In death penalty cases, the defendant must show that the assistance of counsel he received was so defective that it requires the reversal of his conviction or death sentence. Hightower v. Schofield, 365 F.3d 1008, 1038 (11th Cir. 2004).

In Strickland, the Supreme Court set out different standards for ineffective assistance challenges of a conviction and a death sentence. Strickland, 466 U.S. at 695, 104 S. Ct. at 2068-69. When a defendant challenges his conviction, the issue is whether there is a reasonable probability that the fact finder would have had a reasonable doubt regarding a defendant's guilt, absent the errors on behalf of his counsel. Id.; Hightower, 365 F. 3d at 1038. However, when the death sentence is being challenged, the issue is whether there is a reasonable probability that absent the errors of counsel, the sentencer, and the appellate court which independently evaluates the validity of the sentence, would have determined that the balance of the aggravating factors and mitigating circumstances did not warrant the imposition of a death sentence. Strickland, 466 U.S. at 695, 104 S. Ct. at 2068-69.

8

To be successful on an ineffective assistance of counsel claim, the defendant must satisfy a two-part test: (1) his counsel's performance was deficient, falling "below an objective standard of reasonableness"; and (2) the deficient performance prejudiced his defense so badly that there is a reasonable probability that it impacted the result. Id. at 687-88, 104 S. Ct. at 2064; Quince v. Crosby, 360 F.3d 1259, 1265 (11th Cir. 2004). When reviewing the level of performance provided by counsel, there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" Strickland, 466 U.S. at 689, 104 S. Ct. at 2065.

## A.  Counsel's Trial Preparation.

### 1.  Counsel's Investigation for Mitigating Evidence.

Newland claims that his trial counsel, John W. Davis and Donald E. Manning, were ineffective by failing to investigate his background to obtain information which could have been used as mitigating evidence. Newland acknowledges that he provided his trial counsel with a limited amount of background information; however, he asserts that the information he provided his trial counsel was sufficient to provide them with a starting point from which to obtain information that would have been useful as mitigating evidence. Moreover, Newland avers that his trial counsel could have referred to records in their possession regarding his case rather than relying solely upon him to provide them with information that would have allowed them to perform a productive investigation. Newland alleges that if his trial counsel had performed a reasonable investigation, they would have discovered that his background contained "extensive information" which could have been used as mitigating evidence. (Doc. No. 13, p. 41.) He asserts that trial counsel's failure to investigate was not the result of a tactical decision. Newland contends that he was

9

prejudiced by the unreasonable decision not to investigate and present the mitigating evidence that would have been discovered during an investigation. Newland asserts that he was prejudiced because the prosecution capitalized upon the lack of mitigating evidence presented by his trial counsel as the basis for arguing that the murder was committed without reason, justification, or excuse.

"The Sixth Amendment guarantees a defendant the right to reasonably effective assistance of counsel." Mitchell v. Kemp, 762 F.2d 886, 888 (11th Cir. 1985) (citing Strickland, 466 U.S. at 685-86, 104 S. Ct. at 2063). Defense counsel's duty to investigate prior to trial is governed by a "reasonableness standard." Id. at 888-89; Strickland, 466 U.S. at 691, 104 S. Ct. at 2066. Defense counsel must perform a "reasonable" investigation, or make a "reasonable" decision that such an investigation is not warranted. Mitchell, 762 F.2d at 888; Strickland, 466 U.S. at 691, 104 S. Ct. at 2066. The reasonableness of defense counsel's decision is often impacted by the amount and quality of information provided by the defendant. Mitchell, 762 F.2d at 888-89. In Strickland, the United States Supreme Court held that "inquiry into counsel's conversations with the defendant may be critical to a proper assessment of counsel's investigation decisions[.]" 466 U.S. at 691, 104 S. Ct. at 2066. The Supreme Court further held that defense counsel's decision regarding the level of investigation warranted must be viewed with a strong presumption of reasonableness at the time the decision regarding investigation was made, not with the benefit of hindsight. Id. at 689, 104 S. Ct. at 2065.

The state habeas court rejected this claim stating that Newland did not satisfy either prong of the Strickland test. That court determined that Newland could not establish error on behalf of his trial counsel because Newland had exhibited an "inability and unwillingness

10

to provide background information for use as mitigating evidence[.]" (Resp't Ex. No. 39, p. 118.) The state habeas court noted that Waters v. Thomas, 46 F.3d 1506 (11th Cir. 1995), was instructive as to whether Newland was able to establish that his trial counsel's failure to investigate and present mitigating evidence constituted ineffective assistance of counsel. In Waters, the Court held that "[o]ur decisions are inconsistent with any notion that counsel must present all available mitigating circumstance evidence . . . in order to render effective assistance of counsel[.]" 46 F.3d at 1511.

In rejecting Newland's claim, the state habeas court referred to testimony given by Newland's attorney, Donald E. Manning[4], in a hearing conducted in the Butts County Superior Court on Newland's state habeas petition. Manning testified that he repeatedly tried to get personal information from Newland in order to "humanize" him before a jury; however, Newland refused to provide him with any assistance. Manning testified that he was frustrated because Newland kept telling him, "look, I was a hippy, I moved from place to place, I don't have any friends, and leave that out of it, this is my problem." (Resp't Ex. 39, p. 121.) Manning also testified that he gave Newland a questionnaire; yet, Newland only provided him with vague responses to the questions. For example, Newland noted that he had a second wife "somewhere in Florida." (Id.) In sum, Manning testified that Newland refused to provide him with information, repeatedly stated his decision not to involve others in the case, and expressed his desire that Manning not obtain background information.

---

[4] On March 3-4, 1998, the state habeas court conducted a hearing on Newland's state habeas petition John W. Davis, one of the attorneys representing Newland at trial, was deceased at the time of the hearing Therefore, the only testimony regarding actions taken by Newland's trial counsel came from Manning (Resp't Ex 39, p 60 )

11

The state habeas court referred to the fact that trial counsel called several witnesses in an effort to present mitigating evidence during the sentencing phase of the trial. Manning testified before the state habeas court that he wanted to call Margaret Beggs ("Beggs")[5] as a mitigation witness; however, Manning rejected the idea because he did not feel that she was capable of providing coherent testimony. Manning also testified that he only called the mitigation witnesses who he felt would be beneficial to Newland's case. For example, he called several ministers who had gotten to know Newland in prison, an acquaintance who knew Newland prior to the crimes and after his conversion experience in prison, and Beggs' sister. Additionally, Newland took the stand on his own behalf and expressed remorse for the crimes.

In response to Newland's assertion that his counsel provided him with deficient representation by failing to investigate his background and present witnesses who could have provided the jury with mitigating evidence, the state habeas court determined that Newland failed to show that "there were numerous people with contemporary knowledge" of him that should have been presented. (Resp't Ex. 39, p. 103.) The state habeas court concluded that Newland's counsel provided him with "reasonably effective assistance" in attempting to obtain evidence that could have been used in mitigation. The state habeas court also concluded that Newland obstructed his trial counsel's further investigation of his background by explicitly instructing them not to involve anyone else in his case. (Resp't Ex. 39, p. 122.)

---

[5] Margaret Beggs, "Peggy," is referred to by Newland in this petition as his "common law wife," the state habeas court referred to her as Newland's "girlfriend", and the Georgia Supreme Court referred to her as someone he "resided" with. During Newland's trial, she testified that at the time of the trial she had lived with him for seven years, yet they were not legally married. (Resp't Ex. 8, p. 115.) In an effort to be consistent throughout this Report, this Court will refer to Margaret Beggs as "Beggs"

12

The state habeas court's conclusion that trial counsel's actions were reasonable, in light of the restrictions Newland placed upon them, is not contrary to, or an unreasonable application of, the Supreme Court's holding in Strickland. Based upon a thorough review of the record, the state habeas court reasonably concluded that Newland had not adequately shown how his counsel's investigation for mitigating evidence fell below the objective standard of reasonableness set out in Strickland. Newland ordered his trial counsel not to investigate his background or involve his family members in the case. Further, when asked to provide trial counsel with basic information, he was reluctant and unwilling to provide this information that was necessary for them to conduct an investigation. Thus, the decision not to perform a more extensive investigation was the result of Newland's instructions and trial counsel's respect for Newland's right to control his trial. See Mulligan v. Kemp, 771 F.2d 1436, 1441-42 (11th Cir. 1985) (holding that when evaluating trial counsel's decisions, great deference must be given to those choices made under explicit direction of the client). Newland is not entitled to federal habeas relief on this claim.

### 2. Counsel's Use of Mental Health Evidence.

Newland claims that he received ineffective assistance of counsel because his trial counsel failed to expand upon the State's cursory evaluation of his mental health. He asserts that if his trial counsel had properly investigated his mental health history, his brain damage and mental impairments would have been discovered. Finally, Newland contends that his trial counsel's decision not to investigate his mental health and present evidence that would have resulted from such an investigation was an "unreasonable" decision and prejudicial to his case. (Doc. No. 13, p. 65.)

13

Specifically, Newland alleges that his trial counsel acted unreasonably by failing to obtain independent mental health evaluations. He asserts that these evaluations would have provided extensive information regarding Newland's mental health history and current mental state. Newland contends that while he was incarcerated prior to trial, his behavior indicated that he suffered from psychological and/or neurological conditions which would have been noticed by a diligent attorney. For instance, Newland states that he had no recollection of the events which occurred on the night of the crimes. Additionally, Newland avers that his counsel knew he was depressed, had suicidal tendencies, and had a history of head trauma and chemical dependency.

Newland asserts that if trial counsel had sought an independent mental health evaluation, they would have discovered information that would have had a positive impact on his case. For example, Newland avers that his trial counsel would have learned that he has brain damage, psychological disorders, and a chemical dependency. Newland contends that this information would have been beneficial at trial to show his mental state at the time of the crime, to refute the voluntariness of his confessions, and to present as mitigating evidence.

Newland avers that after his trial, in November 1997, counsel representing him in the instant action obtained independent mental health evaluations. Newland asserts that he was evaluated by Dr. Barry Crown, a psychologist, and Dr. Thomas Hyde, a neurologist. Dr. Crown concluded that the psychological evaluation performed on Newland in preparation for his trial was inadequate. After thoroughly evaluating Newland, Dr. Crown opined that Newland has significant brain damage, a condition exaggerated by the use of alcohol. Newland asserts that Dr. Crown determined his brain damage was located in the

14

portion of the brain which affects the ability to control and manage behavioral impulses. Additionally, this section of the brain impacts the ability to comprehend the consequences of one's actions. Dr. Hyde formed opinions remarkably similar to those made by Dr. Crown with regard to the existence of brain damage, the location of the brain damage, and the effects the brain damage would have on Newland's ability to function. Dr. Hyde also provided an assessment of Newland's mental state at the time of the murder, reporting that:

> [T]here is a high probability that the combination of [Newland's] mental disorder, permanent brain damage, and acute intoxication triggered an episode during which [Newland] was subject to uncontrollable impulses, delusional, confused, without the mental capacity to distinguish right from wrong in relation to the offense, and unable to conform himself to the requirements of the law at the time of the offense.

(Doc. No 13, p. 63.)

Newland alleges that if his trial counsel had taken the reasonable step of sending him for an extensive, independent evaluation, he would have had the benefit of testimony from a mental health professional to provide mitigating evidence at his trial. He avers that the mental health professional could have provided mitigating evidence by testifying about how Newland's behavior was impacted by his brain damage and psychological disorders. Further, Newland asserts that the mental health expert could have testified about his childhood of neglect and its impact on his ability to control his behavior. Newland contends that the presence of this mitigating evidence would have benefitted his case because it would have shown the jury that his actions were controlled by forces beyond his control. Moreover, it would have provided trial counsel with a basis upon which to successfully

15

challenge the voluntariness of his confession and his ability to form the requisite intent to commit the crimes with which he was charged.

Newland contends that his trial counsel's failure to seek an independent mental health evaluation was an unreasonable decision. He avers that the decision was unreasonable because the evidence is clear that he suffers from psychological and neurological problems, the evidence could have been easily obtained, and the evidence would have had a positive impact on the outcome of his case. Newland asserts that during his testimony at the sentencing phase, he testified that there was "no reason" for his actions; however, the introduction of mitigating evidence from a mental health professional would have shown that his actions were beyond his control. (Doc. No. 13, p. 68.) Also, Newland contends that the jury would have known that he suffers from the effects of a neglectful childhood in addition to psychological and neurological disorders. Finally, Newland contends that the presentation of this mitigating evidence could have been enough to impact the jury's decisions during both phases of the trial.

The state habeas court rejected this claim stating that Newland failed to satisfy either prong of the Strickland test. In rejecting this claim, the court noted that Newland was evaluated by mental health experts prior to trial, and the information received from these experts suggested that an independent mental health evaluation would not be beneficial. Based upon this information, Newland's trial counsel decided that it was not prudent to present a psychological and/or neurological defense.

The state habeas court also concluded that Newland's trial counsel made a "reasonable decision" not to pursue a psychological and/or neurological defense. Specifically, the court pointed out that Newland's trial counsel obtained psychological and

16

neurological evaluations before concluding that the presentation of mental health evidence would not be beneficial to his case. The reports from these evaluations further supported the conclusion that an independent assessment was not necessary, and no valid basis existed for raising a psychological and/or neurological defense. Moreover, Manning testified during the state habeas hearing that his own observations of Newland failed to support a conclusion that there was a need for an independent mental health evaluation. Thus, the state habeas court concluded that Newland's trial counsel made a "reasonable" strategic decision not to raise a psychological and/or neurological justification during either phase of the trial.

Prior to trial, Newland was examined by the State's doctor, Dr. D'Alesandro, and he opined that Newland did not suffer from "any psychopathology." (Resp't Ex. No. 39, p. 125.) Manning testified that his history of working with Dr. D'Alesandro led him to conclude that Dr. D'Alesandro's medical opinions could be trusted as both objective and reliable. Manning concluded that Dr. D'Alesandro's opinion that Newland did not suffer from "any psychopathology" further supported his own decision that an independent mental health evaluation would not be beneficial to Newland's case.

Also prior to trial, Newland received an evaluation by Dr. William Clary, a neurologist provided by the State. In his report, Dr. Clary noted that during Newland's life, he had been involved in two accidents where he received head trauma that left him in an unconscious state. The report further provided that Newland was evaluated by a neurosurgeon following these two incidents, and the neurosurgeon concluded that Newland's brain function was "normal." (Resp't Ex. 39, p. 127.) While Dr. Clary's report noted that Newland suffered from tension headaches, Dr. Clary's medical conclusion was

17

that Newland did not have a more significant underlying neurological problem causing the headaches.

The state habeas court additionally referred to the fact that after receiving a neurological evaluation, Newland was also evaluated by a forensic team prior to trial. The forensic team opined that Newland was "competent to stand trial" and did not suffer from "delusional or compulsive" ideas at the time of the alleged murder. (Doc. No. 13, p. 128.) The forensic team concluded that: "While he admits to being intoxicated as a result of excessive use of liquor, this is noted as a voluntarily precipitated condition and not considered as a legal defense." (Id.) The state habeas court concluded that Newland received the assistance of competent mental health experts, and based upon the opinions of these experts, his trial counsel made a reasonable decision not to pursue a psychological and/or neurological defense or to present such information as mitigating evidence.

Based upon a review of the record, this Court concludes that the state habeas court correctly applied Strickland in finding that there was nothing objectively unreasonable with trial counsel's decision not to obtain and present the opinions of independent mental health professionals. Prior to trial, Newland was evaluated by a psychiatrist, a neurologist, and a forensic team. The reports from these experts failed to provide evidence suggesting that additional evaluations would have elicited information which could be used as mitigating evidence. Rather, these reports suggested that there was no reason for trial counsel to obtain additional evaluations. Moreover, Newland's current assertion that he later found other mental health experts who concluded the evaluations performed on him prior to trial were inadequate is not sufficient to show that his trial counsel made an unreasonable

18

decision to rely on the mental health evaluations they received, which indicated that further evaluations were unnecessary. Thus, the state habeas court's conclusion that trial counsel's representation did not fall below an objective standard of reasonableness is not contrary to, or an unreasonable application of, the Supreme Court's holding in Strickland. Further, the state habeas court's determination was not unreasonable based upon the testimony from Newland's trial counsel that all of the evidence before him suggested that an additional mental health evaluation would not benefit Newland's case. Newland is not entitled to federal habeas relief on this claim.

## B. Counsel's Challenge to the Voluntariness of Newland's Statements.

Newland argues that his trial counsel provided him with inadequate representation by failing to seek the exclusion of his statements based on the issue of "voluntariness." In support of this contention, Newland provides this Court with the following statement of facts: He was arrested in the early morning hours of May 31, 1986, and he had four interviews with Glynn County detectives. The first two interrogations occurred on the morning of his arrest. During these two interrogations, he made no admissions because he did not remember the events at issue due to his intoxicated state. During the third interview which occurred on June 1, he made a confession. However, due to problems with the recording device used during this interview, the interview was not recorded. The fourth interview, conducted on June 2, was performed in order to record statements made, but not recorded, during the third interview. At this fourth interview, he made incriminating statements. (Doc. No. 13, pp. 74-75.)   The United States Supreme Court's holding in Jackson v. Denno, 378 U.S. 368, 84 S. Ct. 1774, 12 L. Ed.2d 908 (1964), governs the voluntariness of confessions, and in pertinent part provides:

19

> It is now axiomatic that a defendant in a criminal case is deprived of due process of law if his conviction is founded, in whole or in part, upon an involuntary confession, without regard for the truth or falsity of the confession, and even though there is ample evidence aside from the confession to support the conviction.

378 U.S. at 376, 84 S. Ct. at 1780 (internal citation omitted). A confession is not "voluntary" pursuant to the Due Process Clause of the Fourteenth Amendment when law enforcement officials have used coercive conduct. Colorado v. Connelly, 479 U.S. 157, 167, 107 S. Ct. 515, 522, 93 L. Ed.2d 473 (1986). Coercion can be mental or physical. Blackburn v. Alabama, 361 U.S. 199, 206, 80 S. Ct. 274, 279, 4 L. Ed.2d 242 (1960); Chambers v. Florida, 309 U.S. 227, 237, 60 S. Ct. 472, 477, 84 L. Ed. 716 (1940). The test for determining if a confession is the result of coercion requires a review of the "totality of the circumstances." Blackburn, 361 U.S. at 206, 80 S. Ct. at 280 (citing Fikes v. Alabama, 352 U.S. 191, 197, 77 S. Ct. 281, 284, 1 L. Ed.2d 246 (1957)). When a determination has been made that the confession is "involuntary," it must be set aside. Id. at 205, 80 S. Ct. at 279.

### 1. *Counsel's Assistance at the Jackson-Denno Hearing.*

Newland alleges that his trial counsel provided him with ineffective assistance at this hearing. Newland contends that his trial counsel acted inadequately by failing to raise available facts and law that would have resulted in the suppression of his confession. Also, Newland asserts that trial counsel performed deficiently by failing to develop mental health evidence which would have undermined the reliability of his confession. Newland contends that, even if this Court determines either one of these bases alone does not warrant a

20

finding that his trial counsel's actions were prejudicial, when viewed together, their impact clearly prejudiced the outcome of both phases of his trial.

At the conclusion of the Jackson-Denno[6] hearing, the trial judge made the following ruling:

> I find that any in-custody statements which are subject to use by the State at the trial of this case were understood by the defendant. That such statements were freely and voluntarily given by the defendant with a full understanding and appreciation of the rights which he had and the consequence of his statements and the waiver of his Constitutional rights in those instances.

(Resp't Ex. 3, p. 71.)

### a.     Counsel's use of facts and law.

Newland alleges that his trial counsel failed to provide him with effective assistance by failing to make use of the facts and law which supported a finding that his confession was involuntary. Newland asserts that Bill Williams, a Glynn County detective, used aggressive tactics in the second interview. Newland avers that Williams repeatedly informed him that he had committed the murder. Also, Newland avers that he was threatened that Beggs would be arrested if he did not confess.

Newland asserts that at the Jackson-Denno hearing, Williams testified that he did not threaten him during the second interview. Newland also asserts that the transcript from the second hearing belies Williams' assertions. Newland further asserts that Williams made implied threats that became direct in nature when Newland was threatened that Beggs would be charged if he did not confess to the crimes.

---

[6] Denno, 378 U S at 368, 84 S. Ct. at 1774 (holding that a defendant is entitled to a hearing on the voluntariness of his confession prior to its admission at trial).

21

Newland avers that his trial counsel's performance was deficient at the hearing because they failed to point out that Williams' testimony at the hearing was inconsistent with his statements in the interrogation transcripts. Newland contends that trial counsel's failure to point out these inconsistencies was unreasonable performance; if they had pointed out that Williams threatened him, the judge would have concluded that the statements were not voluntary.

Newland asserts that his trial counsel's performance was objectively unreasonable because the law supported a finding that his confession was unreliable; however, his trial counsel failed to present the relevant facts that would have shown that his confession should be suppressed because it was not voluntary. Newland avers that his trial counsel's failure to know the applicable law, and in turn the failure to present the facts applicable to this law, constituted representation that fell below an objective standard of reasonableness.

Newland contends that his counsel's actions were prejudicial to his case. He avers that if his counsel had known the applicable law and presented the applicable facts, his confession would have been suppressed. Further, he alleges that it is highly probable that without the existence of the confession at trial, there would have been a different outcome during the guilt/innocence phase. Newland avers that the confession was the crux of the State's evidence against him. He concludes that even if the presence of the confession did not impact the outcome at the guilt/innocence phase, it was prejudicial to him during the sentencing phase.

In rejecting Newland's contention that his counsel performed inadequately during the Jackson-Denno hearing, the state habeas court initially noted that the hearing was held after Newland's counsel requested the hearing to address the voluntariness of his

22

statements. Additionally, contrary to Newland's assertion that he was interrogated four times, the state habeas court concluded that only three interrogations occurred: the first interrogation occurred on the morning of May 31, 1986; the second was held on the afternoon of May 31, 1986; and the third, and final interrogation, was held during the afternoon of June 1, 1986.

The state habeas court referred to Manning's testimony that his ability to argue that Newland's statement was not voluntary was severely limited. Manning testified that he could have presented a strong argument for the suppression of any statements made during the first interrogation while Newland was possibly still under the influence of alcohol; however, the statements made in the third interrogation, two days after the first, were consistent with the statements made during the first interrogation. Thus, the state habeas court concluded that any argument that intoxication impacted Newland's statements during the first interrogation was defeated.

The state habeas court further rejected Newland's claim because trial counsel conducted an "effective cross-examination" of the only two witnesses presented by the State during the Jackson-Denn o hearing. The two witnesses were Glynn County detectives Bill Williams and Dennis Krauss. (Resp't Ex. 39, p. 66.) Trial counsel questioned Williams about Newland's state of mind during the first interrogation. Williams was also asked about Newland's physical presence, whether he showed signs of being intoxicated, and whether Newland informed Williams that he had consumed a large amount of alcohol prior to the interrogation. During the cross-examination of Krauss, he was asked about Newland's demeanor when he was taken into custody and Newland's response when he was informed that the victim died. The state habeas court concluded that the

23

record showed that trial counsel had attempted, admittedly unsuccessfully, to challenge the validity of Newland's statements on various grounds. Further, that court determined that even though trial counsel was not successful in getting Newland's statements suppressed, there was no proof that their actions fell to the level of being ineffective assistance of counsel.

A thorough review of the transcript from the Jackson-Denno hearing reveals that the state habeas court correctly applied Strickland in concluding that Newland had not adequately shown his trial counsel failed to present the applicable facts and law during this hearing. Newland's trial counsel performed a thorough cross-examination of Williams and Krauss. During trial counsel's questioning of both witnesses, they were asked numerous questions regarding the validity of the procedures they employed to make Newland aware of his rights. Williams, the detective who questioned Newland during each of the interrogations, was also questioned extensively on Newland's demeanor during the interrogations, whether Newland's actions showed that he was under the influence of alcohol, whether Newland informed Williams that he was under the influence of alcohol during the first interview, whether coercive tactics were used during the three interrogations, and whether threats against Beggs were used to elicit a confession from Newland.

Newland's trial counsel also thoroughly cross-examined Krauss, the detective who met with Newland at the Glynn County Detention Center where Newland was held following his arrest. Krauss was questioned about the circumstances under which he informed Newland that the charges against him had been increased from aggravated assault to murder following the death of the victim. Trial counsel also questioned Krauss about the

24

circumstances under which Newland was informed that Krauss had arrest warrants for Newland and Beggs and the circumstances under which Newland confessed to his involvement in the murder.

The state habeas court's determination that the representation provided by Newland's trial counsel, while not successful in getting his statements suppressed at the Jackson-Denno hearing, was adequate representation is a reasonable determination based on the evidence before the state habeas court. At the outset, this Court acknowledges that the factual findings of the state habeas court are presumed correct absent clear and convincing evidence to the contrary and are entitled to great deference. Miller-El v. Cockrell, 537 U.S. 322, 340, 123 S. Ct. 1029, 1041, 154 L. Ed.2d 931 (2003). However, contrary to the state habeas court's factual determination that only three interrogations occurred, a review of the record establishes that there were actually four interrogations. While it is noteworthy that the state habeas court's factual finding in this regard is not supported by the record, this does not impact this Court's ultimate legal determination that the state habeas court properly applied Strickland in concluding that Newland's trial counsel provided him with adequate representation during the Jackson-Denno hearing. Thus, the state habeas court's conclusion that trial counsel's representation during the Jackon-Denno hearing was reasonable is not contrary to, or an unreasonable application of, the Supreme Court's holding in Strickland. Newland is not entitled to federal habeas relief on this claim.

b.    Counsel's development of mental health evidence.

Newland also alleges that he received ineffective assistance of counsel during the Jackson-Denno hearing because his trial counsel failed to obtain an adequate evaluation

25

of or present evidence bearing on his mental health condition. He avers that his counsel did not request a psychological evaluation until the day of the hearing. Further, he asserts that his counsel failed to request a continuance of the hearing to allow time for his evaluation. Newland avers that the use of findings from the psychological evaluation would have supported a finding that his confession was not voluntary. Newland avers that there was evidence that he was emotionally unstable during the time his confession was made. However, he alleges that his trial counsel failed to develop or present this information during the Jackson-Denno hearing.

Newland asserts that two mental health evaluations were obtained by the attorneys representing him in the instant action. He contends that both experts opined that he had permanent organic brain damage that would have caused serious impairments in his ability to remember. Additionally, he asserts that he was suffering from alcohol withdrawal at the time of his interrogations which prevented him from withstanding the coercive tactics used to obtain his confession. Newland asserts that if his trial counsel had obtained an independent evaluation, they would have received evidence that supported a finding that his confession was not "freely and voluntarily" given.

Newland contends that the failure to seek an independent evaluation from a mental health professional was an "unreasonable" decision. Additionally, Newland asserts that this decision was detrimental to the outcome of his case. He avers that the admission of evidence from an independent mental health professional would have been sufficient to establish that the "totality of the circumstances" did not support a finding that his confession was voluntary.

26

Newland avers that his confession was the primary piece of evidence used to show the existence of motive or intent for the commission of the crimes. Further, he contends that if the confession had been excluded, the guilt/innocence phase would have had a different outcome. Finally, Newland concludes that, even if this Court finds his trial counsel's failure to develop mental health evidence is insufficient to establish prejudice, his trial counsel's failure to raise available facts and law, in addition to their failure to develop mental health evidence, is sufficient to establish prejudice.

The state habeas court rejected Newland's claim on the ground that his trial counsel made a reasonable strategic determination that presenting a defense that Newland's mental health was affected by his use of alcohol was not a viable option. Additionally, the court determined that Newland's loss of memory regarding the murder did not provide a valid basis for challenging the admissibility of Newland's confession. The state habeas court pointed out that Newland's trial counsel was faced with the problem that their client asserted "memory loss" of the events surrounding the murder. (Resp't Ex. No. 39, p. 62.) However, based upon Manning's interactions with Newland, he concluded that Newland's memory loss was not the result of a psychological and/or neurological condition. Rather, Manning testified that he believed that Newland's "memory loss" was a defense mechanism employed by Newland to remain in denial of his actions. The state habeas court further determined that Newland's trial counsel, during the Jackson-Denno hearing, reasonably addressed the impact of alcohol on his statements. Specifically, his counsel cross-examined the two officers who participated in Newland's interrogations; they were questioned regarding Newland's demeanor and whether he exhibited signs of being intoxicated during the interrogations.

27

The state habeas court's determination that Newland's trial counsel did not act deficiently with regard to the investigation and presentation of mental health evidence during the Jackon-Denno hearing was a reasonable determination based upon the evidence before them. As addressed above in Section I.A.1., the Jackson-Denno hearing transcript reveals that Newland's trial counsel were severely limited in their ability to obtain, and ultimately present, mitigating evidence due to Newland's instructions not to investigate, in addition to his unwillingness to provide them with background information. Thus, the state habeas court's conclusion that his counsel's representation at the hearing did not fall below an objective standard of reasonableness is not contrary to, or an unreasonable application of, the Supreme Court's holding in Strickland. Newland is not entitled to federal habeas relief on this claim.

2. *Counsel's Challenge to the Voluntariness of Newland's Confession.*

Newland asserts that he received ineffective assistance of counsel from his trial counsel because they did not adequately challenge the voluntariness of his confession. Newland contends that following the initial objection to the admission of his incriminating statements which instigated the Jackson-Denno hearing, his trial counsel failed to make an additional objection when the statements were admitted into evidence during the trial. Newland also alleges that his trial counsel failed to adequately present the jury with an explanation of the events which occurred during Newland's interrogations and how these coercive conditions impacted his ability to make voluntary statements. Newland contends that his trial counsel failed to inform the jury that he was repeatedly threatened that if he did not confess, Beggs' freedom would be in jeopardy. Newland concludes that this information was critical to an understanding of the voluntariness of his statements.

28

Additionally, he avers that this information would have given the jury evidence from which to conclude that his confession was not freely and voluntarily made.

Citing the Supreme Court's decision in Crane v. Kentucky, 476 U.S. 683, 106 S. Ct. 2142, 90 L. Ed.2d 636 (1986), Newland contends that even if there has been a judicial determination that a confession was voluntarily given, a defendant has a constitutional right to inform the jury of the circumstances surrounding his confession to show that the statement was not reliable. Newland additionally asserts that his trial counsel performed deficiently by failing to attack the reliability of his confession by presenting the coercive circumstances under which the confession was made.

Newland asserts that the failure to properly address the voluntariness of his confession at trial was prejudicial to his case. He refers to the following portion of the trial transcript from the State's closing argument to support his contention that the case against him was heavily reliant upon his confession to establish intent:

> Now, you can't get inside a human mind and determine intent. What you have to do is look at the acts of a person and the circumstances, and when you look at these acts, and this woman was called out of her house and [sic] attempted to kiss [sic], and then in his own statement to [Detective] Williams, he hit her and threw her to the ground.

(Resp't Ex. No. 9, p. 144.)

Newland contends that if his trial counsel had made a reasonable argument regarding the involuntary nature of his confession, it would have had a positive impact on the outcome of his trial. He avers that based upon the instructions given to the jury, if it had been informed that Williams threatened to arrest Beggs if he did not confess, the jury

29

would have disregarded Newland's confession.[7]   Finally, Newland asserts that his confession was the primary piece of evidence used to convict him.  He contends that, even if his confession did not impact the outcome of the guilt/innocence phase, it is highly probable that it impacted the outcome of the sentencing phase.

The trial judge instructed the jury that it *could not* consider Newland's confession unless it concluded that he was warned and understood his constitutional rights and knowingly gave up these rights and that his confession was "clearly voluntary and freely given." (Resp't Ex. 10, p. 14.)  Additionally, the jury was informed that the State bore the burden of proving the existence of these two components.  The jury was further instructed that if the State failed to establish the existence of either of these two components, "you must disregard the statement entirely and give it no consideration in reaching your verdict." (Resp't Ex. 10, p. 15.)  The trial judge's instructions wherein a "voluntary statement" was defined, informed the jury that such a statement must be

> freely and willingly given with a complete understanding and without threats or use of violence, fear of injury, suggestions or promises of leniency or reward. A statement induced by the slightest hope of benefit or the remotest fear of injury is not voluntary.  To be voluntary a statement must be the product of a free will and not under any compulsion or any necessity imposed by others.

(Resp't Ex. 10, pp. 14-15.)

The state habeas court rejected Newland's claim that his counsel acted ineffectively by failing to object to the admission of his confession.  The court determined that trial counsel's actions at the Jackson-Denno hearing were reasonable.  The state habeas court

---

[7]A jury is presumed to follow the instructions given by the trial court. United States v. Shenberg, 89 F.3d 1461, 1472 (11th Cir 1996) (citing United States v. Stone, 9 F.3d 934, 938 (11th Cir. 1993))

AO 72A
(Rev 8 82)

further concluded that after the trial judge determined that the statements were freely and voluntarily made, it was not ineffective assistance for Newland's trial counsel to fail to object when the statements were admitted. Specifically, the trial judge made a determination of the issue at the Jackson-Denno hearing and concluded that the statements were voluntarily made. Finally, the state habeas court determined that it was a strategic decision on the part of trial counsel not to object to the statements already determined to be admissible; therefore, Newland failed to show that his trial counsel's failure to object was unreasonable.

The state habeas court's determination that Newland's trial counsel made a reasonable tactical decision regarding whether to address the volunta riness of his statements at trial was a reasonable conclusion based upon the evidence before them. Most notably, during the Jackson-Denno hearing, the trial court ruled that Newland's confession was voluntary. The state habeas court reasoned that Newland had not adequately shown how his counsel's failure to address the voluntariness of his confession at trial fell bellow an objective standard of reasonableness. Specifically, the state habeas court noted that the decision not to present Newland's allegations that his statements were made in a coercive environment was a tactical decision. The state habeas court's conclusion that the representation did not fall below an objective standard of reasonableness is not contrary to, or an unreasonable application of, the Supreme Court's holding in Strickland. See Mincey v. Head, 206 F.3d 1106, 1143 (11th Cir. 2000) (reasoning that counsel's tactical decisions should be respected so long as they appear reasonable in light of the circumstances).

31

Newland cites Crane to support his assertion that he was "entitled" to have the jury informed about the coercive circumstances he contends existed when his inculpatory statements were made. 476 U.S. at 683, 106 S. Ct. at 2142. The Crane Court held that even after a Jackson-Denno hearing during which the trial judge concludes that the defendant's statements were voluntary, a defendant still has the "prerogative" to present the same facts before the jury to allow it to determine whether the statements are reliable. Id. at 688, 106 S. Ct. at 2145. Although Newland asserts that he is entitled to relief pursuant to Crane for the first time in the instant petition, this assertion is nothing more than a recapitulation of an issue presented before the state habeas court. As discussed above, the state habeas court properly applied Strickland to its determination that the failure to present evidence regarding the circumstances he contends surrounded his confession did not fall below an objective level of reasonableness. That court concluded that trial counsel's decision was a tactical decision to which the court deferred. Thus, Newland is not entitled to federal habeas relief on this claim.

## C. Counsel's Assistance During Voir Dire.

Newland alleges that his counsel was ineffective for failing to conduct an adequate voir dire and asking questions that prejudiced the attitudes of venire members. Newland asserts that these instances of deficient performance prevented him from being tried by a fair and impartial jury. He asserts that absent these errors during voir dire, there is a reasonable probability that the outcome of his guilt/innocence phase would have been different. He avers that even if it did not impact the guilt/innocence phase, it is very likely that it was prejudicial to the outcome of the sentencing phase. Thus, he concludes that these errors were prejudicial to the outcome in both phases of his trial.

32

The Sixth Amendment guarantees the right to an impartial jury in federal criminal prosecutions, and the Fourteenth Amendment provides the same protection to defendants facing prosecution in State court. Nebraska Press Ass'n v. Stuart, 427 U.S. 539, 551, 96 S. Ct. 2791, 2799, 49 L. Ed.2d 683 (1976). Voir dire is the process by which a defendant ensures that his right to an impartial jury is protected. Rosales-Lopez v. United States, 451 U.S. 182, 188, 101 S. Ct. 1629, 1634, 68 L. Ed.2d 22 (1981). This process allows the defendant to evaluate the venire members to determine which ones can serve as "fair and impartial" jurors. United States v. Vera, 701 F.2d 1349, 1355 (11th Cir. 1983). A fair and impartial juror is one whose verdict is based upon the evidence presented at trial. See Stuart, 427 U.S. at 551, 96 S. Ct. at 2799; Irvin v. Dowd, 366 U.S. 717, 723, 81 S. Ct. 1639, 1643, 6 L. Ed.2d 751 (1961).

Newland alleges that his counsel failed to adequately question venire members to reveal any biases they might have had regarding criminal defendants and the death penalty. He further asserts that trial counsel's superficial questioning of venire members was so deficient that it prevented his counsel from ensuring that an impartial jury was chosen. Newland refers to the questioning of venire member Otto Cothran as "typical" of the cursory questioning performed by trial counsel. (Doc. No. 13, p. 90.) He asserts that in questioning Cothran about his social background, trial counsel only asked Cothran whether he had friends who worked in law enforcement; whether he was a member of a local church or a business or social club; and whether he had a history of military service. (Resp't Ex. 4, p. 84.)

Newland contends that trial counsel acted deficiently by failing to thoroughly question venire members about their attitudes toward the death penalty. He avers that trial

33

counsel limited their questions regarding beliefs about the death penalty to whether venire members would be willing to impose a life sentence. Newland further asserts that after this cursory query was made of venire members, trial counsel failed to follow up with additional questions in order to probe more deeply into the venire members' feelings on the death penalty. Newland alleges that trial counsel's death-qualification questions[8], raised pursuant to Witherspoon v. Witt, 391 U.S. 510, 88 S. Ct. 1770, 20 L. Ed.2d 776 (1968), were so inadequate that they failed to pass constitutional muster. Specifically, Newland contends that the questions lacked the requisite "specificity and clarity" necessary to assess the views of venire members regarding the death penalty and whether they were capable of serving as impartial jurors. (Doc. No. 13, p. 90.)

Newland avers that trial counsel did not follow up on the initial answers given by venire members which showed the existence of a potential bias. For instance, Newland asserts that during the questioning of Clara Williams, it was revealed that her daughter had been the victim of a bank robbery. (Resp't Ex. 4, p. 53.) Newland avers that trial counsel did not follow up on this answer to determine how this might impact Williams' ability to serve as a juror. Newland asserts that trial counsel's failure to follow up on Williams' admission that her daughter was the victim of a violent crime was prejudicial because Williams was ultimately chosen to serve on the jury. Newland concludes that if Williams had been properly questioned, any biases she held following the victimization of her daughter would have been revealed. However, because trial counsel did not pursue this

---

[8] Death qualification is the process by which potential jurors are questioned to determine whether their views on capital punishment would prevent them from performing their duties as a juror in accord with both the law and their oath. Wainwright v. Witt, 469 U.S. 412, 424, 105 S. Ct. 844, 852, 83 L. Ed.2d 841 (1985); Greene v. State, 268 Ga. 47, 48, 485 S.E.2d 741, 743 (1997).

34

issue with her, Newland alleges that it is not known whether Williams was truly an impartial juror.

Additionally, Newland asserts that his counsel asked venire members questions which prejudiced their impartiality. He alleges that venire members were asked questions about the "meaning" of a life sentence which suggested that a "life sentence" may be something less than life in prison. Newland contends that the implication that a "life sentence" is something less than life spent in prison erroneously raised an external issue not properly before the jury: the probability that he might be entitled to parole. Newland cites the questioning of venire member Otto Cothran and how he was questioned regarding what the term "life imprisonment" meant:

> [Trial Counsel]: Could you equally consider a life sentence?
>
> [Cothran]: Yes, sir.
>
> [Trial Counsel]: And what does a life, a sentence of life imprisonment mean to you?
>
> [Cothran]: It don't have any meaning other than life term.

(Resp't Ex. 4, p. 85.) Newland asserts that asking venire members what "life imprisonment" meant to them caused them to question whether a "life sentence" meant something other than life in prison. Newland refers to the question posed to venire member Irene Higginbotham as another example of this form of prejudicial questioning:

> [Trial Counsel]: Well, let me ask you this. What does a sentence of life imprisonment meant [sic] to you?
>
> [Higginbotham]: What it means? Well, I think, to mean [sic] to me it would [sic] for the rest of his life, and that's what it means, sir?

35

(Resp't Ex. 5, p. 152.) Newland asserts that these highly prejudicial questions were not unique. He asserts that these inappropriate questions were typical of the questions trial counsel asked of venire members. Newland asserts that the repetitive questioning about the meaning of a "life sentence" drew attention to the fact that a "life sentence" does not necessarily mean that a defendant sentenced to "life imprisonment" will spend the rest of his life in prison. Newland concludes that the improper questions posed by trial counsel suggesting that "life imprisonment" does not always mean a life sentence prejudiced the outcome of his case by reducing the chance that the jury would impose a life sentence.

The state habeas court rejected Newland's claim that his counsel provided him with inadequate representation during voir dire, concluding that Newland failed to satisfy either prong of the Strickland test. The court summarily held, "After reviewing the transcript of the voir dire as a whole, this Court finds that [Newland] has failed to establish that the trial court's handling of voir dire proceedings was inadequate to eliminate jurors who could not be fair and impartial as to the death penalty." (Resp't Ex. 39, p. 74.)

The state habeas court's determination that Newland's trial counsel provided him with adequate representation during voir dire, though conclusory, was a reasonable application of Strickland. A thorough review of the transcript from the voir dire proceedings, which the state habeas court reviewed in reaching its conclusion, reveals that the state habeas court reasonably concluded that Newland did not adequately show that his trial counsel provided him with deficient representation during voir dire. Newland's assertion that trial counsel did not adequately question venire members in order to determine whether they might have prejudices or biases is deficient in that Newland has looked at only a portion of the picture. Specifically, he has failed to take into account that

36

prior to the questioning of Cothran by his trial counsel, the judge and the prosecution presented Cothran with several questions designed to elicit any potential problems which would prevent him from serving as an impartial juror. Thus, while Newland asserts that trial counsel did not thoroughly question venire members, when viewed in light of the questioning by the trial judge and the prosecution, the state habeas court reasonably applied Strickland in determining that the questions posed to venire members by trial counsel were sufficient to determine if venire members could serve as impartial jurors.

The state habeas court also reasonably applied Strickland in concluding that Newland failed to show that the questions presented to venire members regarding the meaning of a "life sentence" were prejudicial. In fact, these questions appear to be the result of a tactical decision on the part of trial counsel to determine if potential jurors thought that "life imprisonment" meant something other than a life in prison. If it were discovered that they did, trial counsel could remove them. The transcript from the voir dire proceedings shows that when a question regarding the meaning of "life sentence" was asked of venire member Williams, the *prosecution* objected to the question. In response to this objection, trial counsel stated that the purpose of the question was to determine how potential jurors defined a "life sentence." (Resp't Ex. 4, p. 55.) Thus, because these questions were part of a tactic used by trial counsel to remove those venire members who had preconceived ideas that a "life sentence" meant something other than life in prison, the state habeas court properly deferred to trial counsel's decision in concluding that counsel's actions were reasonable. See Mincey, 206 F.3d at 1143 (stating that great deference should be afforded to counsel's "reasonable" choices).

37

The state habeas court's conclusion that trial counsels' representation during voir dire did not fall below an objective standard of reasonableness is not contrary to, or an unreasonable application of, the Supreme Court's holding in Strickland. Newland is not entitled to federal habeas relief on this claim.

## D. Counsel's Presentation of a Defense During the Guilt/Innocence Phase.

Newland asserts that his trial counsel was ineffective for failing to present a competent, coherent defense during the guilt/innocence phase of his trial. He asserts that this was the result of inadequate trial preparation and his trial counsel's failure to obtain the assistance of a mental health expert. Newland contends that his trial counsel's strategy was to create reasonable doubt regarding whether his intoxication prevented him from being able to form the requisite intent to commit the crimes. Newland contends that based on this strategy, trial counsel called two witnesses: Richard Strickland, a Glynn County officer, and Fred Dodd, a crisis-intervention social worker. Newland avers that Strickland testified that shortly after his arrest, Newland exhibited impaired speech and had the odor of alcohol on him. He contends that Strickland also testified that he performed an alcohol breath analysis test on Newland after noticing these signs which suggested that he was under the influence of alcohol.

Newland avers that trial counsel's trial strategy was to use the testimony of Dodd to show that he was suffering from an alcohol-induced blackout at the time of the murder. However, Newland contends that Dodd's complete lack of experience with alcohol addiction and alcohol-induced blackouts prevented this strategy from being effective. Thus, Newland avers that the decision to call Dodd, because he was not qualified to provide an expert opinion on addiction and the impact of alcohol, was detrimental to trial

38

counsel's attempt to show that Newland was unable to form the requisite intent to commit the crimes with which he was charged. Newland asserts that Dodd's credibility, or lack thereof, was further destroyed by the prosecution during cross-examination. Finally, Newland contends that the prosecution brought out the fact that Dodd was not qualified to testify about blackouts caused by excessive alcohol intake and their potential impact on a person's ability to reason and function.

Dodd was called as an "expert" to testify about his professional evaluation of Newland. He was questioned about his expert knowledge regarding alcohol addiction and alcohol-induced blackouts. His answers showed that he lacked the knowledge to provide expert testimony that was useful to Newland's case. When questioned about his knowledge of alcohol addiction, the following occurred:

[Trial Counsel]: Have you had any experience in, in counseling or crisis intervention with persons who have consumed a lot of alcohol and lost any memory?

[Dodd]: The [sic], my specialty area is, of course, in psychiatric social work. *I am not an addictionologist. I have had limited experience with people that* [sic] *are dealing with addictions.*

(Doc. No. 13, p. 94) (emphasis in original).

Newland avers that during closing arguments, trial counsel conceded that he was guilty and focused on his intoxication as a defense. He contends that trial counsel reminded jurors that Dodd testified about the possibility that Newland was experiencing a blackout at the time of the crime; therefore, they could infer that he did not even know what he was doing at the time of the murder. In response, the prosecution reiterated the fact that Dodd was not an expert and lacked the knowledge to make a determination regarding the existence of intent.

AO 72 A
(Rev 8 82)

Newland asserts that during the charge conference trial counsel requested that an instruction on "voluntary intoxication" be given. He avers that the requested instruction, in pertinent part, provided:

> because of the influence of alcohol . . . one's mind becomes so impaired as to render him incapable of intentionally doing the act charged or of understanding that a certain consequence would likely result from it he would not be criminally responsible for his act.

(Doc. No. 13, p. 97.) Trial counsel argued that the instruction was warranted because it negated intent and showed Newland was not capable of intentionally committing the murder. The trial judge refused to give the requested instruction, concluding that such an instruction was not warranted unless the evidence showed a history of continued, excessive abuse of alcohol prior to the crime. Further, the judge noted that this history of alcohol abuse would have to support a determination that it rendered a defendant unable to determine right from wrong.

Newland asserts that if trial counsel had attempted to investigate into his background, his history of drug and alcohol abuse would have been apparent. Newland contends that because trial counsel did not attempt to find this information, and failed to present this evidence at trial, the instruction on voluntary intoxication was not given to the jury. Newland concludes that the fact that the jury did not receive the instruction was prejudicial to his case because it could have been enough to convince the jury that based upon his intoxication and history of substance abuse, he lacked the ability to form the requisite intent to kill the victim. Thus, a jury instruction on voluntary intoxication, Newland contends, might have led to an acquittal or a life sentence.

40

The state habeas court rejected this claim. That court initially noted that while Newland alleged that his trial counsel acted ineffectively by calling only two witnesses, he failed to establish deficient performance by providing the names of additional, credible witnesses who could have been presented to impact the outcome of the guilt/innocence phase. That court further concluded that Newland's confession, in addition to the State's evidence corroborating the confession, was evidence that was virtually insurmountable for Newland to overcome. The state habeas court noted that Newland's trial counsel stressed the voluntary intoxication defense during closing arguments because they concluded it was the only viable defense. Additionally, Newland's trial counsel asked the jury to consider that he was drunk, and possibly experiencing a blackout, when he made the confession to Williams. The state habeas court concluded that, despite the fact that other attorneys might have taken another approach to the defense and presented a different or additional defenses, Newland failed to show that his trial counsel took an unreasonable approach. Thus, the state habeas court determined that Newland did not establish that the defense presented by his counsel was so inadequate that it constituted ineffective assistance. (Resp't Ex. 39, pp. 90-91.)

The state habeas court's determination that Newland's trial counsel made a reasonable decision regarding the most effective defense was not an unreasonable determination based upon the evidence before it. A review of the record reveals that the state habeas court properly applied Strickland in concluding that Newland had not shown how the defense theory used by counsel constituted deficient performance. Newland's trial counsel had numerous obstacles to overcome when trying to present the jury with a competent defense. Initially, Newland confessed to the murder, and the confession was

41

admitted into evidence. Further, trial counsel was prevented from arguing that Newland was intoxicated when his confession was made because it was made days after he was taken into custody. Also, trial counsel was prevented from arguing that Newland was under the influence of a mental and/or neurological defect because both doctors who examined him concluded that the evidence did not warrant such a finding. Finally, Newland ordered trial counsel not to investigate his background or contact family members in an effort to obtain mitigating evidence.

Thus, the state habeas court's conclusion that the representation Newland received did not fall below an objective standard of reasonableness is not contrary to, or an unreasonable application of, the Supreme Court's holding in Strickland. See Michel v. Louisiana, 350 U.S. 91, 101, 76 S. Ct. 158, 164, 100 L. Ed. 83 (1955) (noting that there is a strong presumption that counsel employed a sound strategy and did not render ineffective assistance). Newland is not entitled to federal habeas relief on this claim.

### E.    Counsel's Assistance During the Sentencing Phase.

Citing the United States Supreme Court's holding in Strickland, Newland summarily contends that his counsel's performance was so deficient at sentencing that it was constitutionally infirm. He asserts that this level of performance undermines the reliability of his death sentence. Newland concludes that based upon this inadequate representation, he should be relieved of his unconstitutional death sentence. In support

42

of this assertion, Newland presented this Court with the following brief statement[9] of the issue:

> For all of the reasons set forth [in the foregoing sections] of this [c]laim, trial counsel rendered [c]onstitutionally deficient performance at sentencing which undermines the confidence in the reliability and fairness of the death sentence. Strickland, 466 U.S. 688, 694 (1984). Petitioner must therefore be relieved of his unconstitutional sentence of death.

(Doc. No. 13, p. 99.)

The Strickland standard applies to claims that counsel performed ineffectively during the guilt/innocence phase; this standard is equally applicable to ineffective assistance of counsel claims arising from counsel's performance during the sentencing phase. Glock v. Moore, 195 F.3d 625, 634-35 (11th Cir. 1999); Williams v. Turpin, 87 F.3d 1204, 1209 (11th Cir. 1996). However, claims addressing counsel's performance during the sentencing phase are focused on whether there is a reasonable probability that absent the errors of counsel, the sentencer, and the appellate court which independently evaluates the validity of the sentence, would have determined that the balance of aggravating factors and mitigating circumstances did not warrant the death sentence. Strickland, 466 U.S. at 695, 104 S. Ct. at 2069.

In rejecting Newland's claim, the state habeas court determined that his counsel's performance at the sentencing phase was "reasonable." The state habeas court noted that trial counsel was severely limited in their ability to function based upon Newland's instruction that he did not want his background checked or his family involved in the case.

---

[9] The Court wishes to note that this claim is very broad and general in nature; thus, it lacks specific grounds for this Court to address. Further, Newland's attempt to state this claim lacks a clear statement of an issue, facts related to an issue, or an application of the pertinent law to an issue.

43

The state habeas court further held that the decision regarding whether the presentation of mental health evidence during the sentencing phase would have been beneficial to Newland's case was a tactical decision. The state habeas court noted that Newland had "experienced trial counsel, familiar with local juries and their reactions to various types of evidence"; therefore, trial counsel's decision not to present the mental health evidence was given great deference. (Resp't Ex. 39, p. 98.) The state habeas court concluded that it was inappropriate to use the benefit of hindsight to evaluate the propriety of trial counsel's decision.

The state habeas court's determination that Newland's trial counsel provided him with adequate representation during the sentencing phase was a reasonable determination based upon the evidence before it. Thus, the court's conclusion that the representation did not fall below an objective standard of reasonableness is not contrary to, or an unreasonable application of, the Supreme Court's holding in Strickland. Newland is not entitled to federal habeas relief on this claim.

**F.    Counsel's Assistance During the Hearing on the Motion for New Trial and on Direct Appeal.**

    *1.    Counsel's Performance During the Hearing on the Motion for a New Trial.*

Newland avers that during the motion for a new trial, John Davis[10] conceded that he had thoroughly reviewed the record and was unable to find an issue for the trial court to review. Newland concludes that this representation fell below that which a reasonable attorney would have provided.

---

[10] Davis was Newland's only attorney during the motion for new trial and on direct appeal.

44

A criminal defendant is entitled to effective representation during all "critical stages" of the criminal process. Iowa v. Tovar, __ U.S. __, 124 S. Ct. 1379, 1383, 158 L. Ed.2d 209 (2004); United States v. Wade, 388 U.S. 218, 224, 87 S. Ct. 1926, 1931, 18 L. Ed.2d 1149 (1967). "[T]he motion for new trial is a critical stage of the initial phases because it is at this stage that the constitutional right to equal and meaningful access to the courts, particularly through effective representation by counsel, attaches, and that the defendant's substantial rights on direct appeal may be adversely affected." Turpin, 87 F.3d at 1210. Thus, a criminal defendant is entitled to receive effective representation during the hearing on a motion for a new trial. Id.; Adams v. State, 199 Ga. App. 541, 543, 405 S.E.2d 537, 539 (1991).

The state habeas court rejected Newland's claim on the ground that he did not satisfy either prong of the Strickland test. Initially, the court noted that it was forced to rely solely on the record before it rather than any testimony from Davis regarding the actions he took and the rationale behind these actions because Davis was deceased at the time of the hearing before the state habeas court. Thus, the decision was made without the benefit of testimony that would have provided the court with counsel's explanation regarding the procedure he used to determine what issues were meritorious.

The state habeas court concluded that Davis' statement that he was unable to find any issues warranting presentation was not determinative as to whether Newland received adequate representation. Rather, the court noted that the statement by Davis showed that he had reviewed the trial transcript, in its entirety, in an attempt to find an issue to present at the hearing. The state habeas court concluded that Newland had failed to show that

45

his counsel provided him with inadequate representation during the hearing. Likewise, the court concluded that Newland had not shown the existence of prejudice.

The state habeas court's determination that Newland's trial counsel provided him with adequate representation during the hearing on his motion for a new trial was a reasonable determination based upon the evidence before it. A thorough review of the transcript from the hearing on the motion for a new trial reveals that the state habeas court properly applied Strickland in concluding that Newland had not adequately shown how his counsel failed to act reasonably during the hearing. As noted by the state habeas court, Davis' statement at the hearing that he had reviewed the trial transcript and was unable to find any errors to raise shows that he reviewed the record in an attempt to find legitimate claims. Because Davis was deceased at the time of the hearing before the state habeas court, that court heavily relied on this statement for any knowledge regarding the steps Davis took to find a credible claim to present. While Davis was unsuccessful in finding a claim to raise during the hearing, the state habeas court concluded that he could not be held responsible for the fact that he was unable to find an issue to raise. The state habeas court properly deferred to Davis' review of the trial transcript to find any errors. Thus, the state habeas court's conclusion that the representation did not fall below an objective standard of reasonableness is not contrary to, or an unreasonable application of, the Supreme Court's holding in Strickland. Newland is not entitled to federal habeas relief on this claim.

## 2. Counsel's Performance on Direct Appeal.

Newland asserts that the appellate brief submitted by Davis was a hollow attempt to allow him to exercise his constitutional right to appeal his conviction. He contends that

46

the brief consisted of copies of transcribed trial testimony without a statement of the applicable law or a legal argument. Newland avers that the brief presented only two issues: whether the victim's statements were *res gestae*[11] declarations and whether Newland was entitled to a directed verdict on the aggravated assault with intent to rape charge. Newland alleges that his appellate counsel should have raised the issue of the voluntariness of his confession on appeal to the Georgia Supreme Court, as his confession was obtained as the result of coercion. Further, Newland contends that this issue should have been raised because the confession was admitted in violation of State and federal laws.

Newland avers that he was prejudiced by his counsel's failure to present the issue of voluntariness before the Georgia Supreme Court. Newland contends that the court might have concluded that his confession was not freely and voluntarily made, the admission of his confession was harmful error, and his conviction and/or sentence should be reversed because his confession was erroneously admitted. In addition, Newland contends that even if the Georgia Supreme Court did not find his confession standing alone to be prejudicial, there is a reasonable probability that the court would have determined that the harm created by the admission of the confession, in addition to the admission of the victim's statements identifying Newland as her assailant, would have been prejudicial.

---

[11] *Res gestae* statements are defined as. "Declarations accompanying an act, or so nearly connected therewith in time as to be free from all suspicion of device or afterthought, shall be admissible in evidence as part of the res gestae " O.C.G.A. § 24-3-3 (2004).

47

The Fourteenth Amendment guarantees a criminal appellant the right to counsel during his first appeal by right. Douglas v. California, 372 U.S. 353, 83 S. Ct. 814, 9 L. Ed.2d 811 (1963); Penson v. Ohio, 488 U.S. 75, 79, 109 S. Ct. 346, 349, 102 L. Ed.2d 300 (1988). The "right of appeal" should be more than a "'meaningless ritual.'" Evitts v. Lucey, 469 U.S. 387, 394, 105 S. Ct. 830, 834, 83 L. Ed.2d 821 (1985) (quoting Douglas, 372 U.S. at 358, 83 S. Ct. at 817). While appellate counsel need not raise every argument suggested by his client, counsel must "play the role of an active advocate, rather than a mere friend of the court assisting in a detached evaluation of the appellant's claim." Id. at 394, 105 S. Ct. at 835.

The facts underlying the admission of the victim's statements under the *res gestae* exception were summarized by the Georgia Supreme Court as follows:

> [Officer Greg] McMichael testified he asked the victim who had attacked her and read her lips to say the name, 'Bob.' He then sounded out the name, 'Bob' and asked the victim if this was correct. She nodded her head affirmatively. When asked the last name of her assailant, the victim mouthed a word that McMichael could not understand. He then asked the victim if the name began with an 'A.' She shook her head negatively. McMichael proceeded in this manner through the alphabet until he asked about the letter 'N.' The victim 'nodded her head vigorously' and squeezed his hand. By this procedure McMichael was able to elicit affirmative shakes of the head from the victim to the letters, 'N E W L A.' McMichael then asked the victim if the last name was 'Newland.' The victim 'nodded her head again very vigorously,' and squeezed McMichael's hand.

Newland, 258 Ga. at 175-76, 366 S.E.2d at 692-93. When addressing this issue, the Georgia Supreme Court held:

> We find it unnecessary to determine whether the res gestae exception controls the admissibility of this evidence because we find that even if there was error in admitting McMichael's testimony, it was harmless. The testimony was admitted for the purpose of identifying the defendant as the victim's assailant. *Other evidence in the case, including the defendant's confession*

48

> which is not challenged in any regard, overwhelmingly establishes the identity of the defendant as the victim's assailant.

Id. at 176, 366 S.E.2d at 693 (emphasis added). Newland contends that this ruling by the Georgia Supreme Court suggests that the court would have addressed the issue regarding whether the statements were properly admitted under the res gestae exception if appellate counsel had presented the court with the knowledge that the validity of Newland's confession was being challenged.

Newland further concludes that, if his appellate counsel had not provided him with deficient representation by failing to raise and litigate the voluntariness of his confession, there is a "strong probability" that the Georgia Supreme Court would have found that the victim's statements were not properly admitted under the res gestae exception. He further asserts that there is a "reasonable probability" that the determination that his confession was not properly admitted would have necessitated a review of the res gestae issue. Thus, he contends that it is probable that the court would have concluded that the victim's statements were not properly admitted under the res gestae exception, and the admission of these statements was prejudicial to the outcome of his case.

The state habeas court rejected Newland's claim on the ground that he did not satisfy either prong of the Strickland test. The Court prefaced its analysis by stating that its review of the performance of Newland's counsel on direct appeal was based upon the record before it because Newland's appellate counsel was deceased. Thus, the court did not have the benefit of hearing testimony from appellate counsel regarding the procedure employed to determine which issues he deemed meritorious.

49

The state habeas court referred to the holding in Griffin v. Wainwright, 760 F.2d 1505 (11th Cir. 1985). Specifically, that court pointed out the Court's holding that "counsel need not brief issues reasonably considered to be without merit." Id. at 1515. The state habeas court noted that the same standard is applied for ineffective assistance of counsel claims regarding counsel's performance during trial and on appeal. Thus, the representation need not be "perfect assistance." Alvord v. Wainwright, 725 F.2d 1282, 1291 (11th Cir. 1984). The court stated that despite Newland's allegations to the contrary, the length of an appellate brief is not determinative as to whether he was provided with adequate representation on appeal. The state habeas court pointed out that Newland's appellate counsel raised the following critical issues: (1) Newland did not receive a directed verdict on the offense of aggravated assault with intent to rape; (2) the victim's statements naming Newland as the assailant were not suppressed; and (3) Newland's conviction was not supported by a sufficiency of the evidence. The state habeas court concluded that Newland did not establish that his appellate counsel provided him with deficient representation. Additionally, the court held that despite Newland's allegations to the contrary, the mere fact that other issues were available does not mean that he was prejudiced by his counsel's decision not to present them on appeal.

The state habeas court's determination that Newland's appellate counsel provided him with adequate representation on direct appeal to the Georgia Supreme Court was a reasonable application of Strickland. Newland has not adequately shown how his appellate counsel failed to provide him with reasonable representation on direct appeal to the Georgia Supreme Court. Initially, after reviewing the brief submitted by appellate counsel to the Georgia Supreme Court, this Court is disturbed by the brevity of the

50

statement of applicable law and legal analysis contained in the brief. The brief contains a regurgitation of trial testimony followed by a mere two and a half pages of law and legal argument. In these two and a half pages, appellate counsel purportedly addressed whether the victim's hearsay statements should have been admitted during the trial as statements falling under the *res gestae* exception to the hearsay rule, and whether Newland was entitled to a directed verdict on the charge of aggravated assault with intent to rape. (Resp't Ex. 13.)

In the brief submitted by Newland in support of his petition for state habeas relief, Newland provided the state habeas court with a list of 36 instances he asserts showed that he received inadequate representation by appellate counsel. The state habeas court found that Newland failed to establish that he received deficient representation on appeal. Assuming, *arguendo*, that one of these 36 examples presents a viable claim establishing that Newland was provided with objectively unreasonable representation, the state habeas court also concluded that Newland failed to fulfill the second prong of Strickland, the requirement that he was prejudiced by this objectively unreasonable representation. Newland's argument before the state habeas court that he was prejudiced by appellate counsel's actions, in its totality, stated:

> The deficiencies in counsel's performance as set forth above were prejudicial to the defense in that there is a reasonably probability that, but for counsel's unprofessional errors, the result of the appeal [sic]. The writ must issue.

(Resp't Ex. 23, p. 75.) Thus, based upon this brief statement, lacking any explanation as to *how* any of the asserted 36 errors prejudicially impacted the outcome of Newland's appeal to the Georgia Supreme Court, the state habeas court's determination that Newland failed to show that he received ineffective assistance of counsel on appeal was a

51

reasonable application of United States Supreme Court precedent. See Williams, 529 U.S. at 413, 120 S. Ct. at 1523. Specifically, the state habeas court applied Strickland. When applying the Strickland test, the state habeas court made a reasonable determination that Newland failed to show how his appellate counsel's performance was so deficient that it prejudiced the outcome of his appeal. Thus, the state habeas court's determination is not contrary to, or an unreasonable application of, the Supreme Court's holding in Strickland. Newland is not entitled to federal habeas relief on this claim.

## II.  Procedural Default Analysis

Newland contends that jury instructions given during the guilt/innocence phase and the sentencing phase[12] were "ambiguous, insufficient, vague, contrary to law[,] and confusing." (Doc. No. 13, pp. 108-09, 114.) Newland alleges that, as a result of these erroneous jury instructions, the jury's decisions are unreliable. Newland also alleges that his constitutional rights were violated by several acts of the prosecution during his trial, which are enumerated below in Section II.B. Respondent generally contends that each of these issues are procedurally defaulted, as Newland failed to raise these issues at trial and/or on direct appeal. (Doc. No. 18, pp. 11-13.)

Absent a federal habeas petitioner's showing of cause and prejudice, a court is precluded from addressing the merits of: "(a) successive claims that raise grounds identical to grounds heard and decided on the merits in a previous petition; (b) new claims, not previously raised, which constitute an abuse of the writ; or (c) procedurally defaulted claims in which the petitioner failed to follow applicable state procedural rules in raising the

---

[12] This enumeration of error is discussed in Section III of this Report.

52

AO 72A
(Rev. 8/82)

claims[.]" Sawyer v. Whitley, 505 U.S. 333, 339, 112 S. Ct. 2514, 2518, 120 L. Ed.2d 269 (1992) (emphases and internal citations omitted). If a state court "declined to address a [petitioner's] federal claims because the [petitioner] . . . failed to meet a state procedural requirement", the state court's "judgment rests on [an] independent and adequate state [law] ground[ ]." Coleman v. Thompson, 501 U.S. 722, 730, 111 S. Ct. 2546, 2554, 115 L. Ed.2d 640 (1991). A district court "will not entertain a procedurally defaulted constitutional claim in a petition for writ of habeas corpus absent a showing of cause and prejudice to excuse the default." Dretke v. Haley, __ U.S. __, 124 S. Ct. 1847, 1849, __ L. Ed.2d __ (May 3, 2004). In order to establish "cause" for procedural default, "a petitioner must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in the state court." Henderson v. Campbell, 353 F.3d 880, 892 (11th Cir. 2003). "Prejudice" is established by a showing "that there is at least a reasonable probability that the result of the proceeding would have been different." Id. However, a petitioner need not show cause and prejudice to excuse procedural default if there has been a "fundamental miscarriage of justice." Id. "A 'fundamental miscarriage of justice' occurs in an extraordinary case, where a constitutional violation has resulted in the conviction of someone who is actually innocent." Id. (quoting Murray v. Carrier, 477 U.S. 478, 495-96, 106 S. Ct. 2639, 2678, 91 L. Ed.2d 397 (1986)). The actual innocence standard is met when a petitioner shows "'that it is more likely than not that no reasonable juror would have convicted him' of the underlying offense." Fortenberry v. Haley, 297 F.3d 1213, 1222 (11th Cir. 2002) (quoting Schlup v. Delo, 513 U.S. 298, 327, 115 S. Ct. 851, 867, 130 L. Ed.2d 808 (1995)).

53

## A. Jury Instructions Given During the Guilt/Innocence Phase.

Newland avers that, during the guilt/innocence phase of the trial, the judge improperly charged the jury on reasonable doubt. Specifically, Newland avers that the jury was given the erroneous instruction that the State had to prove each essential element of the crime charged beyond a reasonable doubt, i.e., not beyond all doubt or to a mathematical certainty but beyond a moral and reasonable certainty. Newland alleges that "there is a reasonable likelihood that the jury understood the instructions to allow conviction based on proof insufficient to meet the reasonable doubt standard[.]" (Doc. No. 13, p. 110.) Newland also alleges that the jury instruction on flight carried with it the potential of being interpreted by a jury as an intimation of the judge's opinion that there was evidence of flight and that the circumstances of flight implied Newland's guilt. Thus, Newland contends, the instruction on flight was improper under Georgia law and constitutes reversible error. Newland further alleges that the judge's instruction on voluntary intoxication, given over trial counsel's objection, did not accurately inform the jury on Georgia law and encouraged the jury to ignore evidence of intoxication and its effect on Newland's intent to commit the crimes for which he was charged. Finally, Newland alleges that the trial judge failed to give curative instructions after the prosecution sought to inflame the jury's passions by graphically describing the victim's injuries.

Respondent asserts that the state habeas court "properly applied the cause and prejudice standard and correctly concluded [that these claims] had been procedurally defaulted." (Doc. No. 19, p. 12.) Respondent also asserts that the state habeas court correctly found that Newland failed to establish deficiencies in the trial judge's charge

which required objections by counsel. (Doc. No. 35, p. 8.) Thus, Respondent avers, Newland cannot show cause to overcome his procedural default.

## 1. The Trial Judge's Instruction on Reasonable Doubt.

Newland asserts that the trial judge's reference to the phrase "moral and reasonable certainty" fails to clarify or provide any substantive context for this phrase. Newland alleges that the judge's instruction as to moral certainty[13] did not include a definition meaning "only certainty with respect to human affairs, nor did it include language such as 'abiding conviction' designed to impress upon the factfinder the need to reach a subjective state of near certitude of the guilt of the accused." (Doc. No. 13, p. 110.) Newland contends that, because the jury was instructed that they could convict him if they were morally and reasonably certain of his guilt, there is a reasonable likelihood that the jury interpreted the court's instruction to allow a finding of guilt based on a degree of proof below constitutional requirements; thus, Newland asserts the verdict violates the Constitution.

---

[13] The instruction Newland contends is erroneous is as follows:

> In Georgia no person shall be convicted of a crime unless each essential element of such crime is proved beyond a reasonable doubt. The burden of proof rests upon the State to prove each essential element of the crime charged in the indictment beyond a reasonable doubt. The State, however, is not required to prove the guilt of the defendant beyond all doubt or to a mathematical certainty.

> Under Georgia law moral and reasonable certainty is all that can be expected in a legal investigation. A reasonable doubt means just what it says. It is the doubt of a fair minded, impartial juror, honestly seeking the truth. It is not an arbitrary nor a capricious doubt, but it is a doubt arising from a consideration of the evidence, from a lack of the evidence, or from a conflict in the evidence. If after giving consideration to all the facts and circumstances of the case, your minds are waivering, unsatisfied and unsettled, then that is the doubt of the law and you should acquit the defendant. If that doubt does not exist in your minds as I have explained it to you, then you should convict the defendant.

(Resp't Ex. 10, pp. 6-7) (emphasis as supplied in Newland's petition).

AO 72 A
(Rev 8/82)

The state habeas court concluded that Newland procedurally defaulted this claim, as he failed to raise this issue before the trial court and on direct appeal. The state habeas court also concluded that Newland could not establish that he received ineffective assistance of counsel as "cause" to overcome this default. Finally, the state habeas court concluded that Newland also failed to demonstrate prejudice to overcome the procedural default of this claim.

The state habeas court's determination that Newland procedurally defaulted this claim rests upon an independent and adequate state law ground. Under Georgia law, state habeas relief is not available to a petitioner who failed to make a "timely motion or objection" or to otherwise comply "with Georgia procedural rules at trial and appeal" absent a showing of cause for the noncompliance and actual prejudice, or to avoid a fundamental miscarriage of justice. O.C.G.A. § 9-14-48(d). Likewise, this Court can not review Newland's procedurally defaulted claim absent a showing of cause and prejudice. Even if Newland could show this Court that he received ineffective assistance of counsel to constitute "cause" to overcome the procedural default, he can not show that he was prejudiced as a result of this jury instruction on reasonable doubt in light of existing Supreme Court precedent.

"[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." In re Winship, 397 U.S. 358, 364, 90 S. Ct. 1068, 1073, 25 L. Ed.2d 368 (1970). An alleged constitutionally deficient jury instruction "may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole[.]" Estelle v. McGuire, 502 U.S. 62, 72,112 S. Ct. 475, 482, 116 L. Ed.2d 385 (1991). A court reviewing

56

jury instructions must determine "'whether there is a reasonable likelihood[14] that the jury has applied the challenged instruction in a way' that violates the Constitution." Id. (quoting Boyde v. California, 494 U.S. 370, 380, 110 S. Ct. 1190, 1198, 108 L. Ed.2d 316 (1990)).

The Supreme Court reviewed a trial judge's use of the phrase "moral certainty" given during jury instructions on reasonable doubt in Victor v. Nebraska, 511 U.S. 1, 114 S. Ct. 1239, 127 L. Ed.2d 583 (1994). While the Supreme Court did not necessarily approve of the trial judge's use of the phrase, the Court nonetheless found that the use of the phrase "moral certainty," in the context of the rest of the instruction, did not "render[ ] the instruction given . . . unconstitutional." Victor, 511 U.S. at 17, 114 S. Ct. at 1248. The Supreme Court explained that there was "no reasonable likelihood that the jury would have understood moral certainty to be disassociated from the evidence in the case." Id. at 16, 114 S. Ct. at 1248. The Court also explained that it was not "reasonably likely that the jury understood the words 'moral certainty' either as suggesting a standard of proof lower than due process requires or as allowing conviction on factors other than the government's proof." Id.

Much like the use of the phrase "moral certainty" in the instructions set forth in Victor, the trial judge's use of this same phrase during his instructions on reasonable doubt during Newland's trial did not offend the Due Process Clause of the Constitution. The jurors were instructed that reasonable doubt is a doubt that is based on the evidence, or lack thereof, of a defendant's guilt. When this phrase is taken in context with the whole of

---

[14] In Estelle, the Supreme Court "disapprove[d of] the standard of review language" such as that found in Cage v. Louisiana, 498 U.S. 39, 41, 111 S Ct. 328, 329, 112 L Ed.2d 339 (1990) ("In construing the instruction, we consider how reasonable jurors could have understood the charge as a whole.") Estelle, 502 U.S. at 73, 112 S Ct at 482 n.4

AO 72 A
(Rev. 8/82)

the trial judge's instruction on reasonable doubt, there is no "reasonable likelihood" that the jurors could have misconstrued these instructions to allow Newland to be convicted on a standard less than a reasonable doubt. See Estelle, 502 U.S. at 72, 112 S. Ct. at 482. The state habeas court's determination that Newland procedurally defaulted this claim is an independent and adequate state law ground. Newland has failed to establish prejudice to excuse his procedural default of this claim. Newland is not entitled to federal habeas relief on this claim.

### 2. The Trial Judge's Instruction on Flight.

Newland avers that the trial judge's instruction on flight violated his rights to due process and a fair trial and compromised the role of the jury as the exclusive fact finder. (Doc. No. 13, p. 111.) The state habeas court concluded that Newland procedurally defaulted this claim, as he failed to bring this before the trial court and during his direct appeal. That court also concluded that Newland could not establish that he received ineffective assistance of counsel as "cause" to overcome this default. Finally, the state habeas court concluded that Newland failed to demonstrate prejudice to overcome the procedural default of this claim.

Under Georgia law, state habeas relief is not available to a petitioner who failed to make a "timely motion or objection" or to otherwise comply "with Georgia procedural rules at trial and appeal" absent a showing of cause for the noncompliance and actual prejudice, or to avoid a fundamental miscarriage of justice. O.C.G.A. § 9-14-48(d). Likewise, this Court can not review Newland's procedurally defaulted claim absent a showing of cause and prejudice.

58

The challenged portion of the trial judge's instruction included the word "if." By including this word, the trial judge allowed the jury to decide whether Newland engaged in flight. Further, the instruction on flight allowed the jury to recognize it could only use Newland's flight as evidence if the jury believed Newland was actually engaged in flight. Without repeating verbatim the judge's instruction on flight, in the passage of the jury instructions cited by Newland, the judge used the word "if" no less than six (6) times. (Resp't Ex. 10, p. 17.) Clearly, the jury was the finder of fact as to the issue of flight, and trial counsel had no reason to object to the judge's instruction. The state habeas court's determination that Newland procedurally defaulted this claim rests upon an independent and adequate state law ground. Newland has failed to establish cause and prejudice in this Court to excuse his procedural default of this claim. See Estelle, 502 U.S. at 73, 112 S. Ct. at 483 (noting that a claim can be clearly foreclosed by the language of the instruction). Accordingly, Newland is not entitled to federal habeas relief on this claim.

3.    The Trial Judge's Instruction on Intoxication.

Newland also avers that the trial judge's instruction on voluntary intoxication was an incorrect statement of Georgia law. "[T]he fact that [an] instruction was allegedly incorrect under state law is not a basis for habeas relief." Estelle, 502 U.S. at 71-72, 112 S. Ct. at 482. Because Newland contends this instruction was erroneous solely because the instruction was an incorrect statement of State law, this Court is unable to review this assertion of error. Newland is not entitled to federal habeas relief on this claim.

4.    The Trial Judge's Response to the Prosecution's Argument.

Newland further avers that the trial judge failed to give curative instructions after the prosecution knowingly sought to inflame the jury's passions by graphically describing the

59

victim's injuries. Specifically, Newland asserts that the judge failed to cure the effect of the misconduct by instructing the jury that such considerations could not be the basis for their conclusions on the question of his guilt or innocence.

The state habeas court concluded that Newland procedurally defaulted this claim, as he failed to bring this claim before the trial court and/or on direct appeal. That court also concluded that Newland could not establish that he received ineffective assistance of counsel as "cause" to overcome this default. Finally, the state habeas court concluded that Newland failed to demonstrate prejudice to overcome the procedural default of this claim.

Under Georgia law, state habeas relief is not available to a petitioner who failed to make a "timely motion or objection" or to otherwise comply "with Georgia procedural rules at trial and appeal" absent a showing of cause for the noncompliance and actual prejudice, or to avoid a fundamental miscarriage of justice. O.C.G.A. § 9-14-48(d). Likewise, this Court can not review Newland's procedurally defaulted claim absent a showing of cause and prejudice.

The trial judge advised the jury that, in considering the evidence of the case, "the indictment or the opening[ and closing arguments and statements of counsel[ ]" were excluded from the definition. (Resp't Ex. 10, p. 10.) The state habeas court's determination that Newland procedurally defaulted this claim rests upon independent and adequate state law ground. Even if Newland were able to establish cause in this Court, he has failed to establish that he was prejudiced by the trial judge's alleged failure to give curative instructions. Accordingly, Newland has failed to establish cause and prejudice in

60

AO 72A
(Rev. 8/82)

this Court to excuse his procedural default of this claim. Newland is not entitled to federal habeas relief on this claim.

## B. Other Constitutional Matters.

Newland generally asserts that his constitutional rights were violated when: (1) the prosecution suppressed evidence of the coercive methods Glynn County detectives used to obtain inculpatory evidence from Newland; (2) the prosecution knowingly presented false testimony through Glynn County detectives; (3) the State improperly introduced irrelevant and inadmissible evidence[15]; (4) the prosecution made improper and inflammatory opening and closing arguments at both phases of the trial; (5) Newland's conviction was founded on an involuntary confession; and (6) the cumulative effect of the errors at his trial deprived him of a fair trial.

### 1. Police Tactics Used During Interrogations.

Newland contends that the prosecution suppressed and continues to suppress evidence of coercive police tactics used by Glynn County detectives to obtain inculpatory statements from him. Newland specifically alleges that a third interview conducted by police was tape recorded, contrary to the police's assertions, and this recording contains "even more explicit threats directed at [him] in order to get him to confess to the murder of" the victim. (Doc. No. 13, p. 128.) In fact, Newland contends that he was told repeatedly that Beggs would be charged with murder and go to prison if he did not confess to the crimes. Newland alleges that the suppression of coercive police tactics violated his Sixth,

---

[15] This allegation is discussed in Section IV.A.

61

Eighth, and Fourteenth Amendment rights, as well as Brady v. Maryland, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed.2d 215 (1963).

Newland failed to raise this issue on direct appeal, and the state habeas court found that he failed to establish cause and prejudice to overcome the procedural default of this claim. In so finding, the state habeas court found that Newland's trial attorney, Manning, testified at the state habeas proceeding that, although he filed a Brady motion, he had access to the District Attorney's file and a court-endorsed open file agreement was in place. Manning testified at the hearing that he had a copy of the typed up statements which Newland made to the police and only recalled that there was one tape of his interviews with police. The state habeas court noted that Manning specifically denied that the tape recorder mysteriously broke when Newland invoked his right to counsel or that the interrogating officer might have helped Newland to fill in the blanks as to what happened on the night in question. The state habeas court noted that, even after it conducted an evidentiary hearing on this matter, Newland failed to establish the existence of the tape of the third interview, and Newland failed to establish that the police utilized coercive tactics. (Resp't Ex. 39, pp. 27-29.)

The state habeas court reviewed Newland's claim that a third interview with the police was recorded. In light of his trial counsel's testimony at the evidentiary hearing, the state habeas court determined that Newland did not establish that a tape of the third interview existed or that the police utilized coercive tactics. The state habeas court noted that Newland did not show that the prosecution suppressed evidence, and, thus, did not show that a Brady violation occurred. Accordingly, Newland could not show that his trial

62

attorney should have done anything as a result, and did not establish cause and prejudice at the state habeas level.

Under Georgia law, state habeas relief is not available to a petitioner who failed to make a "timely motion or objection" or to otherwise comply "with Georgia procedural rules at trial and appeal" absent a showing of cause for the noncompliance and actual prejudice, or to avoid a fundamental miscarriage of justice. O.C.G.A. § 9-14-48(d). Likewise, this Court can not review Newland's procedurally defaulted claim absent a showing of cause and prejudice.

"[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment[.]" Brady, 373 U.S. at 87, 83 S. Ct. at 1196-97. In order to establish a Brady violation, a defendant must prove:

(1) that the government possessed evidence favorable to the defense, (2) that the defendant did not possess the evidence and could not obtain it with any reasonable diligence, (3) that the prosecution suppressed the evidence, and (4) that a reasonable probability exists that the outcome of the proceeding would have been different had the evidence been disclosed to the defense.

Moon v. Head, 285 F.3d 1301, 1308 (11th Cir. 2002).

The state habeas court's determination that Newland procedurally defaulted this claim and could not establish cause and prejudice to overcome this default rests upon an independent and adequate state law ground. Likewise, Newland has failed to show this Court that the prosecution violated his rights under Brady. Accordingly, Newland can not show cause and prejudice to overcome his procedural default on this issue. Newland is not entitled to federal habeas relief on this claim.

63

## 2.    Glynn County Detectives' Testimony.

Newland also asserts that the prosecution knowingly presented false testimony through Detective Bill Williams regarding his alleged use of threats to obtain Newland's confession. Newland avers that, despite Williams' denial under oath that he made any threats or promises to obtain Newland's confession, the transcripts[16] of the interviews make it clear that this is not true. (Doc. No. 13, p. 128.) Newland also alleges that the prosecution elicited testimony from another detective that shoes confiscated from Newland's apartment matched the tread design imprint found where the victim was assaulted. Newland asserts that the prosecution knew or should have known that this testimony was false. He cites to Giglio v. United States[17], 405 U.S. 150, 92 S. Ct. 763, 31 L. Ed.2d 104 (1972), to support his contention that the presentation of a forensic consultant who asserted that the tread design of Newland's shoes did not match the tread design found at the scene of the crime establishes that the State knowingly used false evidence at trial.

The state habeas court likewise found this contention to be procedurally defaulted, as Newland failed to bring this claim before his habeas proceedings. That court also found that Newland was unable to establish cause and prejudice to overcome his procedural default.

The state habeas court's determination that Newland procedurally defaulted this claim rests upon an independent and adequate state law ground, and this Court can not

---

[16] These transcripts do not appear to have been provided to this Court.

[17] Giglio stands for the proposition that "deliberate deception of a court and jurors by the presentation of known false evidence is incompatible with rudimentary demands of justice." 405 U.S. at 153, 92 S. Ct. at 766.

64

review the merits of this claim absent a showing of cause and prejudice. Newland has not proven that a tape of the third interview exists, nor has he shown that police used coercion or threats to obtain his confession. The existence of differing opinions by experts at trial does not establish the falsity of the State's evidence, nor do these differing opinions establish a violation of Brady. Accordingly, Newland has failed to establish cause and prejudice to excuse his procedural default, and this Court is precluded from reviewing the merits of this claim. Newland is not entitled to federal habeas relief on this claim.

### 3. The Prosecution's Opening and Closing Arguments.

Newland generally asserts that the prosecution made improper and inflammatory comments during its opening and closing arguments at both phases of the trial. Newland also asserts that the prosecution made other prejudicial comments during the trial. These actions, Newland contends, deprived him of his rights under the Sixth, Eighth, and Fourteenth Amendments of the United States Constitution, as well as analogous provisions of the Georgia Constitution.

The state habeas court determined that Newland did not raise the claim that the prosecution made improper comments during the guilt/innocence phase of the trial, and, thus, the claim was not properly before that court. The state habeas court accordingly found that this claim had been procedurally defaulted, and Newland did not show cause to excuse this default. Specifically, the state habeas court reasoned that Newland could not show cause (i.e., his counsel was ineffective for failing to object to the prosecution's comments) as to this claim, as a prosecutor is entitled to describe the circumstances of the crime in graphic detail. The state habeas court likewise found Newland's remaining contentions under this allegation of error to be procedurally defaulted, as Newland failed

65

to raise this issue on direct appeal, and Newland was unable to establish cause or prejudice to overcome his default. (Resp't Ex. 39, pp. 34-39.)

The state habeas court's determination that Newland procedurally defaulted this claim rests upon an independent and adequate state law ground. Under Georgia law, state habeas relief is not available to a petitioner who failed to make a "timely motion or objection" or to otherwise comply "with Georgia procedural rules at trial and appeal" absent a showing of cause for the noncompliance and actual prejudice or to avoid a fundamental miscarriage of justice. O.C.G.A. § 9-14-48(d). Likewise, this Court can not review Newland's procedurally defaulted claim absent a showing of cause and prejudice.

Even assuming, *arguendo*, that Newland's trial counsel rendered ineffective assistance by not objecting to comments made by the prosecution throughout the trial and by not raising this issue on direct appeal, Newland can not show prejudice. Newland has not established that the prosecution manipulated or misstated the evidence or violated his constitutional rights. Assuming he could establish this, the trial judge instructed the jury that "[e]vidence is all of the testimony received from the witnesses . . . and any facts agreed to by the lawyers. It does not, however, include . . . the opening and closing arguments and statements of counsel." (Resp't Ex. 10, p. 10.)

As long as a prosecutor's arguments do not "manipulate or misstate the evidence" and do not "implicate other specific rights" of a defendant, these arguments can not be said to be constitutionally infirm. Darden v. Wainwright, 477 U.S. 168, 182, 106 S. Ct. 2464, 2472, 91 L. Ed.2d 144 (1986). In the event a prosecutor makes improper arguments, a trial judge should "instruct the jurors several times that their decision [is] to be made on the basis of the evidence alone, and that the arguments of counsel [are] not evidence." Id.

AO 72A
(Rev. 8/82)

Newland has not established that, if counsel had objected to any comments the prosecutor made or raised this issue on appeal, the outcomes of the trial and/or his direct appeal would h ave been different. The state habeas court's determination that Newland procedurally defaulted this claim rests upon an independent and adequate state law ground. Newland has not established cause and prejudice in this Court to overcome the procedural default. Newland is not entitled to federal habeas relief on this claim.

### 4. Newland's Confession.

According to Newland, his conviction was founded on an involuntary confession, in violation of the Fifth, Sixth, Eighth, and Fourteenth Amendments. The state habeas court declined to address this allegation of error on the merits, as any claim regarding the voluntariness of Newland's confession raised on collateral review had been procedurally defaulted. (Resp't Ex. 39, pp. 41-42.) Specifically, the state habeas court noted that, although Newland's counsel moved to suppress Newland's statements prior to trial during a Jackson-Denno hearing, the admissibility of those statements was not challenged on the basis Newland asserted during his state habeas proceedings. (Resp't Ex. 39, pp. 40-41.) In addition, the state habeas court noted that Newland's trial counsel did not believe evidence of coercive police practices was available for presentation at trial. Moreover, Newland failed to challenge the admissibility of his confessions on any basis on direct appeal. (Resp't Ex. 39, p. 41.)

The state habeas court's determination that Newland procedurally defaulted this claim rests upon an independent and adequate state law ground. Under Georgia law, state habeas relief is not available to a petitioner who failed to make a "timely motion or objection" or to otherwise comply "with Georgia procedural rules at trial and appeal" absent

67

a showing of cause for the noncompliance and actual prejudice or to avoid a fundamental miscarriage of justice. O.C.G.A. § 9-14-48(d). Likewise, this Court can not review Newland's procedurally defaulted claim absent a showing of cause and prejudice.

"[A] defendant in a criminal case is deprived of due process of law if his conviction is founded, in whole or in part, upon an involuntary confession, without regard for the truth or falsity of the confession, and even though there is ample evidence aside from the confession to support the conviction." Denno, 378 U.S. at 376, 84 S. Ct. at 1780 (internal citation omitted). A confession is not "voluntary" pursuant to the Due Process Clause of the Fourteenth Amendment when law enforcement officials have used coercive conduct. Connelly, 479 U.S. at 167, 107 S. Ct. at 522. Coercion can be mental or physical. Blackburn, 361 U.S. at 206, 80 S. Ct. at 279.

As discussed above in Section I.B., Newland failed to show that the state habeas court's determination that his trial counsel did not perform deficiently at the Jackson-Denno hearing is contrary to, or an unreasonable application of, the Supreme Court's holding in Strickland. Likewise, even if Newland were able to show that his trial counsel's performance is sufficient cause to overcome his procedural default, he can not show that the result of his trial would have been different. As a result, Newland fails to show that he suffered prejudice. The state habeas court's determination that he procedurally defaulted this claim rests upon on an independent and adequate state law ground, and Newland has not established cause and prejudice in this Court to overcome his procedural default. Newland is not entitled to federal habeas relief on this claim.

68

5.    *Due Process and a Fair Trial.*

Finally, Newland asserts that, due to the cumulative errors at his trial, he was deprived of due process and a fair trial. The state habeas court reasoned that this claim was procedurally defaulted, and Newland failed to show cause and prejudice to overcome this procedural default. In addition, the state habeas court found that Newland failed to cite to controlling authority on the "cumulative error" rule to establish a claim for relief on collateral review. Newland also failed to establish, the state habeas court observed, any error which would require the reversal of his conviction and sentence. Accordingly, the state habeas court declined to address this contention on the merits. (Resp't Ex. 39, pp. 147-48.)

The state habeas court's determination that Newland procedurally defaulted this claim rests upon an independent and adequate state law ground. Under Georgia law, state habeas relief is not available to a petitioner who failed to make a "timely motion or objection" or to otherwise comply "with Georgia procedural rules at trial and appeal" absent a showing of cause for the noncompliance and actual prejudice or to avoid a fundamental miscarriage of justice. O.C.G.A. § 9-14-48(d). Likewise, this Court can not review Newland's procedurally defaulted claim absent a showing of cause and prejudice.

Appellate counsel's assistance cannot be deemed ineffective under Strickland in failing to raise this issue on appeal because Georgia courts do not follow the "cumulative error" rule of prejudice. See Al Amin v. State, 278 Ga. 74, 86, 597 S.E.2d 332, 347 (2004). The state habeas court's determination that Newland procedurally defaulted this issue is based on an independent and adequate state law ground. Even if Newland could establish that his appellate counsel rendered ineffective assistance as cause, he cannot show he

69

was prejudiced as a result of counsel's failure to raise this issue on appeal. Georgia courts do not follow the "cumulative error" rule of prejudice. Accordingly, Newland can not show cause and prejudice to overcome this procedural default. Newland is not entitled to federal habeas relief on this claim.

## III.   Due Process During Sentencing Phase

Newland generally contends that he was denied due process during the sentencing phase of his trial. Respondent alleges that, although the state habeas court erroneously concluded that these assertions of error were procedurally defaulted[18], it is clear that the state habeas court found these assertions to be without merit. Respondent contends that the state habeas court reasoned that Newland could not establish cause to overcome this default, and that court specifically found that Newland failed to establish deficiencies in the trial judge's sentencing instructions which required objections by his trial counsel.[19] (Doc. No. 36, pp. 15-18.)

### A.   The Trial Judge's Instructions on Mitigating Circumstances.

The trial judge's instruction regarding mitigating circumstances, Newland asserts, was too preclusive, and thus unconstitutional, because the jury was not instructed to consider his background and social history. Newland contends that the judge's use of the

---

[18] Claims of error which allegedly occurred during the sentencing phase jury instructions in a death penalty case can not be procedurally defaulted in Georgia. Head v. Hill, 277 Ga. 255, 265, 587 S.E.2d 613, 624 (2003)

[19] The Court notes that, because claims of error in the sentencing phase instructions can not be procedurally defaulted in Georgia, the state habeas court's determination that Newland failed to establish cause to overcome this default is invalid. Accordingly, the Court will look to each of Newland's allegations regarding errors in the sentencing instructions on their merits. The Court also notes that, because it appears that Newland set forth these claims during his state habeas proceeding, he has exhausted his available state remedies.

70

phrase "if any" during his instructions regarding mitigating circumstances improperly implied that the judge believed that no mitigating circumstances existed, which invaded the province of the jury. Newland alleges that, at sentencing, the trial judge

> failed to: (1) provide even the most basic examples of mitigating circumstances; (2) explain that even a minimum quantum of mitigating evidence, under the law, could be considered by the jury in reaching a life sentence; (3) explain that anything could be considered in mitigation; and, most importantly, (4) explain that unlike the guilt/innocence phase of the trial, there was no need for the jury to weigh mitigating evidence against any aggravating evidence.

(Doc. No. 13, pp. 115-16.)

"[T]he Eighth and Fourteenth Amendments require that the [jury] . . . not be precluded from considering, as a mitigating factor, any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death." Lockett v. Ohio, 438 U.S. 586, 604, 98 S. Ct. 2954, 2964-65, 57 L. Ed.2d 973 (1978) (emphasis omitted); Bell v. Ohio, 438 U.S. 637, 642, 98 S. Ct. 2977, 2980, 57 L. Ed.2d 1010 (1978). "[T]he Constitution requires that there be no reasonable possibility that a juror will misunderstand the meaning and function of mitigating circumstances, i.e., that the law recognizes the existence of circumstances which in fairness or mercy may be considered as extenuating or reducing the punishment." Peek v. Kemp, 784 F.2d 1479, 1494 (11th Cir. 1986). The Constitution does not require "that the jury instructions include any particular words or phrases to define the concept of mitigation or the function of mitigating circumstances. It is sufficient from a constitutional standpoint if it is clear from the entire charge considered in context that a reasonable jury could not have misunderstood the meaning and function of mitigating circumstances." Id. However, "a trial court is not required in its charge to identify mitigating circumstances

71

offered by the defendant." Jenkins v. State, 269 Ga. 282, 296, 498 S.E.2d 502, 515 (1998). In addition, "juries are not required to balance aggravating circumstances against mitigating circumstances." Ford v. State, 257 Ga. 461, 464, 360 S.E.2d 258, 261 (1987); Simpkins v. State, 268 Ga. 219, 221-22, 486 S.E.2d 833, 836 (1997).

The trial judge instructed the jury that, in arriving at its determination of the appropriate punishment, it must consider all evidence received during both phases of the trial. The judge also instructed the jury that it was authorized to consider the circumstances and facts, if any, in mitigation or aggravation of punishment. The judge further instructed the jury as follows: "Mitigating circumstances are those which do not constitute a justification or excuse for the offense of murder, but which in fairness and mercy may be considered by the jury as extenuating or reducing the degree or moral culpability or blame of the defendant or otherwise offering a basis for not imposing the death penalty." (Resp't Ex. 10, p. 113.) The judge informed the jury that it could impose a life sentence even if it did not find the existence of any mitigating circumstances.

The jury was not precluded from considering Newland's character or any of the circumstances which he contended should be used as mitigating against the imposition of the death penalty. The jury heard from five witnesses during the sentencing phase, all of whom testified that they believed Newland was a good person and that imposing the death penalty in this case would not serve the ends of justice. (Resp't Ex. 10, pp. 50-74.) In addition, Newland testified in his own behalf that he: did not intend to kill the victim, did not recall what happened on the night in question, and would never, in his right mind, harm the victim. (Resp't Ex. 10, pp. 77, 85, and 91.) Moreover, the trial judge made it clear that mitigating circumstances were those circumstances which "in fairness and mercy may be

72

considered by the jury as extenuating or reducing" Newland's punishment. (Resp't Ex. 10, p. 113.) The trial judge's use of the phrase "if any" in referring to aggravating or mitigating circumstances did not improperly invade the province of the jury. The judge "unquestionably left it to the jury to determine" whether it thought there were any mitigating circumstances. See Estelle, 502 U.S. at 74, 112 S. Ct. at 483.

Newland's remaining assertions of error concerning the trial judge's instructions on mitigating circumstances are likewise without merit. Newland asserts that the trial judge erred in not providing the jury with examples of mitigating circumstances and by not identifying to the jury what Newland offered as mitigating circumstances. Newland also asserts that the judge erred in failing to explain to the jury that it need not balance mitigating circumstances against any aggravating circumstances.

A trial court is not required to provide examples of mitigating circumstances, Peek, 784 F.2d at 1494, nor is a trial court required to identify what a defendant proffered in mitigation. Jenkins, 269 Ga. at 296, 498 S.E.2d at 515. Finally, the trial judge is not required to explain to the jury that it need not balance mitigating and aggravating circumstances. Ford, 257 Ga. at 464, 360 S.E.2d at 261. Newland is not entitled to federal habeas relief on this claim.

## B. The Trial Judge's Instructions on Aggravating Circumstances.

Newland contends that the jury was given ambiguous instructions on aggravating circumstances, which led them to believe that they could impose the death penalty without finding the existence of aggravating circumstances. Newland also contends that the jury was instructed quite extensively that it could impose the death penalty if it found an

73

aggravating circumstance or circumstances, but the jury was not told how it could sentence Newland to life imprisonment.

Under Georgia law, a jury may impose the death penalty if it finds that the defendant committed a capital felony under at least one of ten statutorily enumerated aggravating circumstances. Presnell v. Georgia, 439 U.S. 14, 14, 99 S. Ct. 235, 235, 58 L. Ed.2d 207 (1978). A death sentence may be considered only if the State establishes beyond a reasonable doubt the existence of at least one of the aggravating circumstances set forth in O.C.G.A. § 17-10-30(b)[20], and if such a circumstance is established, the jury nonetheless "may withhold the death penalty for any reason, or without any reason." Simpkins, 268 Ga. at 222, 486 S.E.2d at 836.

The trial judge informed the jury that, before it was authorized to recommend the imposition of the death penalty, it "must find one or more . . . statutory aggravating circumstances given in the charge to exist beyond a reasonable doubt." (Resp't Ex. 10, p. 111-12.) The trial judge also informed the jury it could impose a life sentence even if it found the existence of an aggravating circumstance. The jury was further informed that it could recommend a life sentence even if it did not find any mitigating circumstances existed. The judge told the jury that it had the right to impose a life sentence regardless of a finding of mitigating or aggravating circumstances. The judge also instructed the jury that the sentence was a matter entirely within its discretion and that the jury could recommend a life sentence for the defendant "for any reason that is satisfactory to you or without a reason

---

[20] The Court will address the only applicable aggravating circumstances found in O.C.G.A § 17-10-30(b) in Section III D of this Report

74

if you care to do so." (Resp't Ex. 10, p. 114.) The jury was further instructed that, if it did not find any of the aggravating circumstances had been proven, a life sentence would automatically be imposed upon Newland.

The jury was not given ambiguous instructions on aggravating circumstances, as the jurors were told at least twice that, before they could impose the death penalty, they must find the existence of at least one statutory aggravating circumstance beyond a reasonable doubt. (Resp't Ex. 10, pp. 111-112.) Additionally, the trial judge informed the jury that it could impose a life sentence even if it found a statutory aggravating circumstance existed, if it did not find that any mitigating circumstances existed, for any reason satisfactory to the jury, or without a reason. (Resp't Ex. 10., pp. 111, 112, and 114.) Finally, the jury was informed that a life sentence would automatically be imposed if the jury did not find that a statutory aggravating circumstance existed beyond a reasonable doubt. (Resp't Ex. 10, p. 112.) Newland's assertions in this regard are unavailing, and he is not entitled to federal habeas relief on this claim.

## C. The Trial Judge's Instruction on Unanimity.

Newland further contends that the trial judge's instruction regarding unanimity was an incorrect statement of the law. Newland asserts that, by instructing the jury that its sentencing verdict had to be unanimous, the judge necessarily neglected to instruct the jury that he would impose a life sentence if the jury did not agree on Newland's sentence.

The trial judge did not err by not giving a charge during the sentencing phase that, if the jury could not reach an unanimous verdict, the lack of unanimity by the jury would result in a life sentence. "[I]t is well settled that a trial court is not required to charge the jury about the consequences of deadlock." Jenkins, 269 Ga. at 296, 498 S.E.2d at 515. This

75

allegation is equally unavailing, and Newland is not entitled to federal habeas relief on this claim.

### D. The Trial Judge's Instructions on the (b)(2) and (b)(7) Aggravating Circumstances.

Newland avers that the jury was erroneously instructed on the (b)(2)[21] aggravating circumstance. Specifically, Newland argues that it was error to instruct that this circumstance may be established by a finding that Newland committed the murder while engaged in an aggravated battery on the victim. (Doc. No. 13, p. 122.) The use of "maliciously" in this instruction, Newland asserts, improperly relieved the prosecution from proving the essential element of malice. Additionally, Newland alleges that the trial judge's charge on the (b)(7)[22] aggravating circumstance was inadequate, unclear, and allowed the jury to impose the death sentence based on a circumstance that was unsupported by the evidence. Newland contends that the jury must have unanimously agreed on the (b)(7) aggravating circumstance and what constituted that aggravating circumstance. Newland asserts that the judge's charge on the (b)(7) aggravating circumstance allowed the jury to find depravity of mind, torture, and aggravated battery on less than a unanimous verdict. (Doc. No. 13, p. 124.) Newland additionally asserts that the judge's charge on (b)(7)

---

[21] "In all cases of other offenses for which the death penalty may be authorized, the judge shall consider, or he shall include in his instructions to the jury for it to consider, any mitigating circumstances or aggravating circumstances otherwise authorized by law and any of the following statutory aggravating circumstances which may be supported by the evidence. . . [t]he offense of murder. . . was committed while the offender was engaged in the commission of another capital felony or aggravated battery[.]" O.C.G.A. § 17-10-30(b)(2).

[22] "In all cases of other offenses for which the death penalty may be authorized, the judge shall consider, or he shall include in his instructions to the jury for it to consider, any mitigating circumstances or aggravating circumstances otherwise authorized by law and any of the following statutory aggravating circumstances which may be supported by the evidence. . . [t]he offense of murder. . . was outrageously or wantonly vile, horrible, or inhuman in that it involved torture, depravity of mind, or an aggravated battery to the victim[.]" O.C.G.A. § 17-10-30(b)(7).

AO 72 A
(Rev 8 82)

impermissibly allowed the jury to find the existence of (b)(2) and (b)(7) aggravating factors, both of which could be supported by a finding of an aggravated battery.

The trial judge instructed the jury that it must first determine "whether any statutory aggravating circumstances exist beyond a reasonable doubt which would authorize" consideration of the death penalty. (Resp't Ex. 10, p. 106.) The jury was again instructed on the definition of reasonable doubt; the judge also reminded the jury that the State submitted two aggravating circumstances for its consideration. The first statutory aggravating circumstance was that the offense of murder was committed while the defendant was engaged in the commission of an aggravated battery, which Georgia law defines as "bodily harm to another by depriving . . . her of a member of . . . her body, by rendering a member of . . . her body useless, or by seriously disfiguring . . . her body or a member thereof." O.C.G.A. § 16-5-24(a). The jury was told what it must find regarding the existence of the (b)(2) circumstance. The State had to prove the existence of the (b)(7) circumstance by showing that the murder was "outrageously or wantonly vile, horrible, or inhuman in that it involved torture, depravity of mind, or aggravated battery to the victim." (Resp't Ex. 10, p. 108.) In this regard, the judge instructed the jury that the State must prove to its satisfaction and beyond a reasonable doubt, first, that the murder was outrageously or wantonly vile, horrible or inhuman; and second, that it involved at least one of the following: torture or depravity of the mind by the defendant, or an aggravated battery to the victim; the jury was also instructed that it could not find the existence of the (b)(7) aggravating circumstance unless it agreed that both of these prongs were satisfied. Finally, the jury was instructed that its verdict should reflect its findings, if applicable to the (b)(7) aggravating circumstance, that the murder involved at least one, or any combination

77

thereof, of the following: torture, depravity of the mind, or an aggravated battery. (Resp't Ex. 10, pp. 108-11.)

The Georgia Supreme Court considered Newland's arguments on direct appeal. That court determined that "the evidence supports the jury's findings in regard to the aggravating circumstances [O.C.G.A. §§ 17-10-30(b)(2) and (b)(7)] beyond a reasonable doubt." Newland, 258 Ga. at 176, 366 S.E.2d at 693. The Georgia Supreme Court's determination is not contrary to, or an unreasonable application of Jackson v. Virginia, 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed.2d 560 (1979).

Even if the Georgia Supreme Court misapplied Jackson, Newland is not entitled to relief on this enumeration of error. The trial judge did not err by instructing the jury that, in order to find the existence of the (b)(2) and/or (b)(7) aggravating circumstances, it must find that the offense of murder occurred while Newland was engaged in the commission of an aggravated battery. The trial judge instructed the jury on aggravated battery, and, in so doing, quoted the statutory definition of aggravated battery verbatim. The trial judge was not required to define the word "maliciously," as that word has "such obvious significance and common understanding that there is no need to define it in the jury charge." See Grant v. State, 257 Ga. App. 678, 680, 572 S.E.2d 38, 41 (2002) (noting that if a judge were to define "maliciously" or "malice", he must do so correctly). This instruction did not relieve the prosecution's burden to prove malice beyond a reasonable doubt. In addition, the jury was instructed that, whichever sentence it elected to impose, it must be unanimous.[23] (Resp't

---

[23] As discussed above, this instruction carried with it the implication that, if the jury found the presence of either or both statutory aggravating circumstances, it must have been satisfied that the prosecution proved either or both beyond a reasonable doubt.

78

AO 72A
(Rev. 8/82)

Ex. 10, pp. 114-15.) Moreover, the trial judge did not impermissibly charge the jury by allowing the jury to consider aggravated battery under both O.C.G.A. §§ 17-10-30(b)(2) and (b)(7). See Tharpe v. State, 262 Ga. 110, 114, 416 S.E.2d 78, 82 (1992) (noting that, in accordance with the Georgia Supreme Court's decision in Lonchar v. State, 258 Ga. 447, 453, 369 S.E.2d 749, 754 (1988), the State was not precluded from urging the presence of O.C.G.A. §§ 17-10-30(b)(2) and (b)(7) simply because aggravated battery is a fact supporting both circumstances). As the trial judge provided the jury with proper instructions, Newland is not entitled to federal habeas relief on this claim.

## IV. Introduction of Hearsay Statements

Newland asserts that the trial judge erred by admitting, over trial counsel's objections, the testimony of Detective McMichael regarding statements made by the victim in which she identified Newland as her assailant. (Doc. No. 30, pp. 2-3.) Newland contends that the court sustained counsel's objection to the admission of these statements under the dying declaration exception to the hearsay rule but admitted these statements under Georgia's *res gestae* exception. Newland contends that his Sixth Amendment rights under the Confrontation Clause were violated because he did not have the opportunity to cross-examine the victim. Newland also contends that, if this Court deems this error harmless with respect to his conviction, the illegal introduction of the victim's statements during the guilt/innocence phase prejudiced the outcome of the sentencing phase.[24] Respondent contends that this issue is procedurally defaulted, as Newland did not raise this issue at trial

---

[24] To the extent Newland cites to Crawford v. Washington, __ U.S. __, 124 S. Ct. 1354, 158 L. Ed 2d 177 (2004), his argument is without merit. Crawford is not retroactively applicable to cases on collateral review. Teague v. Lane, 489 U.S. 288, 109 S. Ct. 1060, 103 L. Ed.2d 334 (1989) (plurality opinion).

AO 72A
(Rev. 8/82)

or on direct appeal, and Newland has not shown cause and prejudice to overcome this

default. (Doc. No. 35, pp. 11-12.)

The Georgia Supreme Court noted that Newland appealed the trial court's denial of

Newland's motion in limine to exclude McMichael's testimony (i.e., testimony in which the

victim identified Newland as her assailant) on the ground that it was hearsay. The Georgia

Supreme Court found it

> unnecessary to determine whether the *res gestae* exception controls the
> admissibility of this evidence because we find that even if there was error in
> admitting McMichael's testimony, it was harmless. The testimony was
> admitted for the purpose of identifying [Newland] as the . . . assailant. Other
> evidence in the case, including [Newland's] confession which is not
> challenged in any regard, overwhelmingly establishes the identity of
> [Newland] as the . . . assailant."

Newland, 258 Ga. at 176, 366 S.E.2d at 693.

"[T]here may be some constitutional errors which in the setting of a particular case

are so unimportant and insignificant that they may, consistent with the Federal Constitution,

be deemed harmless[.]" Chapman v. California, 386 U.S. 18, 22, 87 S. Ct. 824, 827, 17 L.

Ed.2d 705 (1967). In other words, a constitutional violation may be harmless error if the

court believes beyond a reasonable doubt that said violation did not contribute to the jury's

verdict. United States v. Robinson, 485 U.S. 25, 36, 108 S. Ct. 864, 871, 99 L. Ed.2d 23

(1988) (Blackmun, J., concurring in part and dissenting in part). The Georgia Supreme

Court's determination on the admission of the victim's identification is not contrary to, or an

unreasonable application of, the United States Supreme Court's holding in Chapman. It is

unnecessary to address Newland's alternative ground for relief because the Georgia

Supreme Court did not unreasonably apply Chapman. Newland is not entitled to federal

habeas relief on this claim.

80

## V. Claims Decided on Their Merits

Newland asserts that the State improperly introduced irrelevant and inadmissible evidence against him, including photographs of the victim after her wounds were expanded and altered during the post-mortem examination. (Doc. No. 13, p. 129.) Newland also asserts that the evidence at trial, taken by itself and in conjunction with the evidence produced during the petition *sub judice*, is insufficient to sustain his conviction for malice murder and aggravated assault with intent to rape. Newland alleges that his execution would be a miscarriage of justice, given compelling evidence of his actual innocence.[25] Finally, Newland alleges that the death penalty is cruel and unusual punishment, as this penalty applies disproportionately to poor males and because it was error to impose the death sentence in this case because defendants in other Georgia cases with similar or worse facts did not receive the death penalty. Respondent contends that all of these issues were decided on the merits in either Newland's direct appeal or during his state habeas proceeding. Respondent asserts Newland is not entitled to his requested relief because the determinations by the state courts on all of these issues are entitled to deference. (Doc. No. 18, pp. 18-19.)

### A. Photographs of the Victim.

Newland alleges that photographs evidencing the victim's wounds after receiving an emergency tracheotomy as a lifesaving measure were improperly admitted into evidence.

---

[25] In the context of capital cases, this means that a petitioner must be actually innocent "of the aggravating circumstances rendering the [petitioner] eligible for the death penalty." Dretke, __ U.S. __, 124 S. Ct. at 1848. A petitioner in this context must establish "'by clear and convincing evidence that, but for constitutional error, no reasonable juror would have found the petitioner eligible for the death penalty under the applicable state law '" Id. at 1852 (quoting Sawyer, 505 U.S at 336, 112 S. Ct. at 2515). As discussed throughout this Report, Newland has failed to meet this standard.

AO 72 A
(Rev. 8.82)

As stated by the United States Supreme Court in Estelle, "'federal habeas corpus relief does not lie for errors of state law,'" unless there is some evidence of a constitutional violation or some other action rendering the trial fundamentally unfair. 502 U.S. at 67, 112 S. Ct. at 480. This prohibition on reviewing state law errors extends to a state court's adjudication of a claim based on the state's evidentiary code. Id. at 72, 112 S. Ct. at 482.

Although Newland did not present this issue on appeal, the Georgia Supreme Court reviewed this assertion of error under the Unified Appeal Procedure[26], as Newland objected to the admission of these photographs during the trial. Newland, 258 Ga. at 174, 366 S.E.2d at 692. The photographs at issue depicted the throat wounds the victim had after an emergency tracheotomy was performed as a lifesaving effort. Newland objected to the use of these photographs because the wounds had been changed by authorities. After a hearing regarding the admission of these photographs during which medical personnel testified that, because the wounds had been closed, they were less grotesque following this procedure than they were prior to the surgery, the trial court admitted the photographs to identify and show the location of the wounds. Id. at 174-75, 366 S.E.2d at 692. The Georgia Supreme Court found no error in the trial court's admission of these photographs for the stated purposes. In so doing, that court stated that "[t]he undisputed evidence shows that the alteration to the wound was made in an attempt to save the victim's life, and left her in a less 'grotesque' state than did [Newland's] attack." Id. at 175, 366 S.E.2d at 692.

---

[26] "Under the Unified Appeal Procedure," the Georgia Supreme Court is "charged with the duty to 'review each of the assertions of error timely raised by the defendant during the proceedings of the trial court regardless of whether or not an assertion of error was presented to the trial court by motion for new trial, and regardless of whether error is enumerated in the Supreme Court.'" Newland, 258 Ga. at 174, 366 S.E.2d at 692 (quoting 252 Ga A-28(1984)).

82

Ordinarily, a federal habeas court will not review claims of error based on the admission of evidence at trial. However, when an enumeration of error is that the admission of this evidence rendered the trial "fundamentally unfair", a federal court should review this enumeration of error "as a federal constitutional issue[.]" Osborne v. Wainwright, 720 F.2d 1237, 1239 (11th Cir. 1983) (citing Donnelly v. DeChristoforo, 416 U.S. 637, 94 S. Ct. 1868, 40 L. Ed.2d 431 (1974), wherein the Supreme Court found that the prosecution's remark about the defendant's expectations at trial did not taint the trial with unfairness so as to make the resulting conviction a denial of due process). "The admission of prejudicial evidence justifies [federal] habeas relief only if the evidence 'is material in the sense of a crucial, critical, highly significant factor.'" Id. at 1238 (internal citation omitted in original).

In the case *sub judice*, the trial court admitted into evidence photographs which depicted throat wounds the victim had after receiving an emergency tracheotomy. The Georgia Supreme Court found no error in the trial court's admission of these photographs to identify and show the location of the victim's wounds. Newland, 258 Ga. at 174-75, 366 S.E.2d at 692. Even if the admission of these photographs prejudiced Newland in some way, it appears that these photographs were not "a crucial, critical, highly significant factor" in the jury's verdict. See Osborne, 720 F.2d at 1238. The Georgia Supreme Court, as discussed in the next section, found that the factual evidence and forensic evidence were sufficient for a rational trier of fact to find Newland guilty of malice murder and aggravated assault with intent to rape. Newland, 258 Ga. at 174, 366 S.E.2d at 691. Although the Georgia Supreme Court's findings on this issue were based on Georgia evidentiary law, Newland has not shown that this determination is contrary to, or an unreasonable

83

application of, the United States Supreme Court's holding in Donnelly. Newland is not entitled to federal habeas relief on this ground.

## B.    Sufficiency of Evidence Supporting Newland's Convictions.

Newland avers that there was insufficient evidence produced at trial to support his convictions for the malice murder and aggravated assault with intent to commit rape. A review of the record in the light most favorable to the prosecution establishes that a rational factfinder could readily have found Newland guilty beyond a reasonable doubt. In reviewing Newland's claim on direct appeal, the Georgia Supreme Court made the following findings of fact:

[O]n May 30, 1986, the defendant and Peggy Beggs, with whom he resided, had 'two or three drinks' before dinner, then went to visit the victim who lived across the street from them. There they shared a bottle of vodka with the victim. Beggs testified that the defendant left the victim's home about an hour before Beggs did. Beggs thought that the defendant had gone to their home because he had too much to drink, but when she returned home he was not there. The defendant arrived a short time later. He did not have on a shirt and was covered in scratches. The defendant told Beggs he had fallen in some bushes. When Beggs went to get some ointment for the defendant she noticed police vehicles across the street at the victim's house. Beggs investigated and learned that the victim had been attacked with a knife. She returned to her home and told the defendant 'something terrible' had happened to the victim. The defendant responded by saying his truck was missing and he did not know where it was. Beggs testified that the defendant's behavior was 'unusual,' and she left the house because she did not want to be around him. When Beggs came home the police were there. They arrested her along with the defendant, first charging them with aggravated assault, and later, with murder after the victim died. Beggs testified that the defendant always carried a small pocket knife on his person.

The defendant initially gave two statements to police in which he denied knowing anything about the attack on the victim. After he learned that Beggs was to be charged with the murder of the victim, he announced his desire to give an additional statement to police, maintaining that Beggs had nothing to do with the crime. The defendant stated he remembered being with Beggs at the victim's home, but could not recall what happened after he left them there. He remembered returning to the victim's house and calling the victim

84

out into the back yard. The defendant told the victim he wanted to kiss her. 'I tried to make a move on her, and then she pushed me away, and we got in a fight and she scratched me and I went crazy. . . .' The victim said she would tell Beggs if the defendant did not leave her alone. The defendant stated he again attempted to kiss her. He said, 'I grabbed her and I threw her down and somehow the knife came in my hand and started stabbing her. . . . I had no reason for it . . . I just went crazy. She didn't do anything to me.' The defendant stated that he then went home, hosed himself off in his back yard, changed into some clothes he had stored in the shed and went to bed. The defendant told police he had consumed three beers and 'the better part of over a half bottle of vodka,' and believed the influence of alcohol caused him to kill the victim. He stated he used a pocket knife to kill her, and had thrown it away, but could not remember where. The murder weapon was never recovered.

The victim suffered four slash wounds to the throat including a four-inch gash which completely exposed her windpipe and left her unable to speak. The victim had a number of stab wounds to the abdominal area which exposed her intestines. A police officer who observed the victim at the hospital testified her face was so caked with blood he could not tell what she looked like. Emergency surgery was performed and the victim lived for 22 hours before succumbing to death due to the loss of blood.

Forensic evidence showed that the defendant's clothes bore blood stains which matched the victim's blood type. The victim had human skin scrapings under her fingernails, but of an amount too small to type. A police officer testified that at the time of arrest the defendant was scratched 'pretty bad' on his chest, arms and face.

Newland, 258 Ga. at 173-74, 366 S.E.2d at 690-91. Given this factual determination, the Georgia Supreme Court held that a "rational trier of fact could have determined beyond a reasonable doubt. . . that [Newland] is guilty of malice murder." Id. at 174, 366 S.E.2d at 691. The court also found that there was "evidence from which the jury could have determined beyond a reasonable doubt that [Newland] is guilty of aggravated assault with intent to rape." Id. The Georgia Supreme Court relied on Jackson in finding that the evidence was sufficient to support Newland's convictions.

85

A petitioner is entitled to habeas corpus relief pursuant to 28 U.S.C.A. § 2254 if it is determined from the record evidence that "no rational trier of fact could have found proof of guilt beyond a reasonable doubt." Jackson, 443 U.S. at 324, 99 S. Ct. at 2791-92. The Georgia Supreme Court relied on this clearly established federal law in making its determination that a rational trier of fact could have found Newland guilty of malice murder and aggravated assault with intent to rape. The court's adjudication on this claim is not contrary to, or an unreasonable application of, the Supreme Court's holding in Jackson. Thus, Newland is not entitled to federal habeas relief on this claim.

### C. The Death Penalty.

Newland makes the blanket assertion that the imposition of the death penalty is cruel and unusual punishment. The Georgia Supreme Court found that Newland's death sentence was not imposed "under the impermissible influence of passion, prejudice or other arbitrary factor." Newland, 258 Ga. at 176, 366 S.E.2d at 693 (citing O.C.G.A. § 17-10-35(c)(1)). The court also reasoned that Newland's sentence of death was "not excessive or disproportionate punishment to sentences imposed in similar cases generally." Id. (citing O.C.G.A. § 17-10-35(c)). The Georgia Supreme Court further reasoned that the facts of Newland's case were similar to the facts in other cases in which the imposition of the death penalty was upheld. Id. (citing Hicks v. State, 256 Ga. 715, 352 S.E.2d 762 (1987) (death penalty imposed where murder victim had five large, gaping lacerations of the throat, an open gash on the abdomen, and eight stab wounds causing death from a near-total loss of blood); Hance v. State, 254 Ga. 575, 332 S.E.2d 287 (1985) (jury authorized in finding aggravated battery to support imposition of death penalty when victim was beaten with such

force and savagery that the cause of death was multiple fractures of the skull and face and removal of victim's brain)).

Capital punishment is not *per se* unconstitutional. Because of the uniqueness of the death penalty, it cannot be imposed under sentencing procedures which create a substantial risk that it will be inflicted in an arbitrary and capricious manner. Gregg v. Georgia, 428 U.S. 153, 188, 96 S. Ct. 2909, 2932, 49 L. Ed.2d 859 (1976) (citing Furman v. Georgia, 408 U.S. 238, 313, 92 S. Ct. 2726, 2764, 33 L. Ed.2d 346 (1972) (White, J., concurring)).

The Georgia Supreme Court reasonably applied clearly established Supreme Court precedent on this issue. That court reviewed the imposition of the death penalty in this case and determined that the jury's finding of two statutory aggravating circumstances was supported by sufficient evidence (i.e., beyond a reasonable doubt). Newland, 258 Ga. at 176, 366 S.E.2d at 693. As the imposition of the death penalty in this case was not "inflicted in an arbitrary and capricious manner," see Gregg, 428 U.S. at 188, 96 S. Ct. at 2932, the Georgia Supreme Court's adjudication on this claim is not contrary to, or an unreasonable application of, the United State Supreme Court's holding in Gregg. Newland is not entitled to federal habeas relief on this claim.

87

AO 72 A
(Rev. 8/82)

## CONCLUSION

Based on the foregoing, it is my **RECOMMENDATION** that Newland's petition for writ

of habeas corpus, filed pursuant to 28 U.S.C. § 2254 (Doc. No. 13), be **DENIED**.

**SO REPORTED** and **RECOMMENDED**, this _27_ day of January, 2005.

JAMES E. GRAHAM
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev 8 82)

# United States District Court
## *Southern District of Georgia*

NEWLAND

_____ )

vs                                                )          CASE NUMBER  CV203-146 _____

HEAD                                         )
_____ )          DIVISION      BRUNSWICK _____

The undersigned, a regularly appointed and qualified deputy in the office of the Clerk of this district, while conducting the business of the Court for said division, does hereby certify the following:

1.  Pursuant to the instructions from the Court and in the performance of my official duties, I personally placed in the United States Mail a sealed envelope, and properly addressed to each of the persons, parties or attorneys named below; and

2.  That the aforementioned enveloped contained a copy of the document dated
    1/27/05 _____, which is part of the official record of this case.

Date of Mailing:            1/27/05 _____

Date of Certificate         [X] same date,    or  _____

                            Scott L. Poff,  Clerk

                    By:     _Sherry Taylor_____
                            Sherry Taylor, Deputy Clerk

Name and Address

Robert Newland, GDCC, GDC 436424, P.O. Box 3877, Jackson, GA 30233
Brian Kammer
Katherine White
Joseph Basta
Michael Garrett
Karen Johnson

[X] Copy placed in Minutes
[ ] Copy given to Judge
[X] Copy given to Magistrate